UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
LUBAVITCH OF OLD WESTBURY, INC, et al.,

                Plaintiffs,                **REPORT AND RECOMMENDATION**
                                              CV 08-5081 (DRH)(ARL)

         -against-

BOARD OF TRUSTEES OF THE VILLAGE OF
OLD WESTBURY, NEW YORK, et al.,

                Defendants.
-----------------------------------------------------------X
**LINDSAY, Magistrate Judge:**

       Plaintiffs Lubavitch of Old Westbury, Inc. (the "Lubavitch") and Rabbi Aaron Konikov

(collectively with the Lubavitch, "Plaintiffs") bring this action pursuant to the Religious Land

Use and Institutionalized Persons Act of 2000, 42 U.S.C, § 2000cc et seq. ("RLUIPA") as well

as 42 U.S.C. § 1983 for violations of their First and Fourteenth Amendment rights, against

Defendants Village of Old Westbury (the "Village") and The Board of Trustees of the Village of

Old Westbury (collectively, "Defendants").   Before the Court, on referral from District Judge

Hurley, is Plaintiffs' motion to amend the complaint pursuant to Federal Rule of Civil Procedure

("Rule") 15.  For the reasons set forth below, the Court respectfully recommends that Plaintiffs'

motion be denied.

## BACKGROUND

I.     **Procedural History**

       Plaintiffs commenced this action with the filing of a Complaint on December 17, 2008

(the "Original Complaint").  ECF No. 1.  In the Original Complaint, Plaintiffs assert

constitutional and statutory claims against the Village, and Harvey Blau, Fred J. Carrilo, Henry A. Alpert, Michael Wolf, and Harvey Simpson (collectively the "Individual Defendants").[1]

By Order dated August  3, 2009, all claims were dismissed, without prejudice, against the Individual Defendants Harvey Blau, Fred J. Carrilo, Henry A. Alpert, Michael Wolf and Harvey Simpson.  ECF No. 30.  Because the Eleventh and Twelfth causes of action were asserted only against the Individual Defendants those counts were dismissed as well.  *Id.*  The remaining claims were placed on administrative hold while the Plaintiffs filed a special use permit application for the development of the parcel located at 267 Glen Cove Road, Village of Old Westbury, New York (the "Application") and until a determination was made by the Board of Trustees for the Village.

In December 2015, acknowledging Plaintiffs had not yet filed the Application, Judge Hurley entered a briefing schedule on Defendants' anticipated motion to dismiss.  On February 12, 2016, before Defendants' dismissal motion was fully briefed and ready for filing, Plaintiffs filed an amended and supplemented complaint.  *See* ECF No. 47.  Plaintiffs' amended complaint was rejected because Plaintiffs had failed to seek court approval be filing.  However,

---

[1] The Original Complaint asserted fourteen causes of action: First Cause of Action:  Free Exercise Clause, United States Constitution First and Fourteenth Amendments 42 U.S.C. § 1983; Second Cause of Action: Free Speech Clause, United States Constitution First and Fourteenth Amendments 42 U.S.C. § 1983;Third Cause of Action: Freedom of Association United States Constitution First and Fourteenth Amendments 42 U.S.C. § 1983; Fourth Cause of Action: Equal Protection Clause, United States Constitution Fourteenth Amendment 42 U.S.C. § 1983; Fifth Cause of Action:  Due Process Clause United States Constitution Fourteenth Amendment 42 U.S.C. § 1983;  Sixth Cause of Action: "Substantial Burdens" RLUIPA 42 U.S.C. § 2000cc(2)(a); Seventh Cause of Action: "Nondiscrimination" RLUIPA, 42 U.S.C. § 2000cc(2)(b)(2); Eighth Cause of Action: "Equal Terms" RLUIPA, 42 U.S.C. § 2000cc(2)(b)(l); Ninth Cause of Action: "Exclusions and Limits" RLUIPA, 42 U.S.C. § 2000cc(2)(b)(3)(A); Tenth Cause of Action:  "Exclusions and Limits" RLUIPA, 42 U.S.C. § 2000cc(2)(b)(3)(B); Eleventh Cause of Action: Civil Conspiracy (Against Individual Defendants) 42 U.S.C. Section l985(3); Twelfth Cause of Action: Failure to Prevent Violations and Civil Conspiracy (Against Individual Defendants), 42 U.S.C. Section 1986; Thirteenth Cause of Action: New York State Constitution - Article 1, §§ 3, 8, 9 and 11; Fourteenth Cause of Action:  New York Civil Rights Law § 40-c Discrimination.

2

Defendants' motion to dismiss was held in abeyance and Judge Hurley directed Plaintiffs' to file a motion to amend the complaint addressed to both Rule 15(a) (amendment) and 15(d) (supplemental).   The court never ruled on the motion to amend and the proposed amended complaint was never accepted for filing.  Rather, the Court held a conference in April 2017 at which the parties agreed to work cooperatively together with the goal of ensuring that Plaintiffs would be able to  file their special permit application.

Between April 2017 and February 2020, the parties submitted 20 joint status reports documenting their progress in the submission and review of material by the Village Building Department and Board of Trustees, the public hearing process, and the environmental impact review process.  *See* ECF. Nos. 62-79, 81-82.  In the latest status report, dated February 21, 2020, the parties stated they were "progressing" and that "the board approved the Final Scope for the Draft Environmental Impact Statement ("DEIS") and the Resolution of the Board of Trustees."  ECF No. 82; Shapiro Decl. Exh. C.  All that remained outstanding was Plaintiffs' filing of the DEIS, after which the Village would hold a public hearing and finish its environmental impact review.

In June 2020, Plaintiffs filed a pre-motion conference request letter to address two subjects: (1) lifting the administrative  hold applied to this action  by the Court on August 4, 2009; and (2) granting Plaintiffs leave to move to amend and supplement the complaint filed in this action.  ECF No. 84.  Judge Hurley waived the requirement for a pre-motion conference and lifted the stay to allow Plaintiffs to file a motion to amend the complaint.  Judge Hurley directed that the motion be addressed to the undersigned.

Plaintiffs' motion to amend was filed on September 2, 2020.  Plaintiffs rely upon their Memorandum of Law in Support of Plaintiffs Lubavitch of Old Westbury, Inc. and Rabbi Aaron Konikov's Motion For Leave to Amend and Supplement the Complaint ("Pl. Mem.") and attach the amended pleading, styled as the "Proposed Second Amended Complaint of Plaintiffs" as Exhibit A to the declaration of Michael A. Cedrone.  For purposes of this decision, and to avoid confusion, since no first amended complaint was ever filed, this amended pleading shall be referred to as the "Proposed Amended Complaint" or "PAC."  Defendants opposed the motion, relying upon Defendants' Memorandum Of Law In Opposition To Plaintiffs' Motion For Leave To File A Second Amended Complaint ("Def. Mem.") and, in reply, Plaintiffs submitted Plaintiffs' Reply Memorandum  Of Law In Further Support Of Their Motion For Leave To Amend And Supplement Their Complaint ("Pl. Reply Mem.") along with the Declaration of Rabbi Aaron Konikov dated August 24, 2020 ("Konikov Dec.").  On October 2, 2020, Defendants moved to strike the Konikov Declaration pursuant to Rule 12(f).  Plaintiffs opposed that motion.[2]

## II.    Factual Background

### A.    The Original Complaint

The following facts are taken from the original complaint and are assumed true for purposes of this motion.

The Lubavitch is a nonprofit religious corporation formed under New York's Religious Corporations Law that owns property located at 267 Glen Cove Road in the Village of Old

---

[2] Following the filing of the motion to amend the complaint both parties have submitted letters bringing recent decisions to the court's attention, and in each case the opposing party has responded to the submission.  ECF Nos. 99-103.

Westbury, New York, (the "Property").  The Lubavitch is attempting to construct the Temple, a place of worship and related facilities.  Orig. Compl. ¶ 9.  Plaintiff Rabbi Aaron Konikov is a natural person who resides in the Village.  *Id*. at ¶ 10.

The Original Complaint names the Village, a municipal corporation formed pursuant to the laws of the State of New York, along with the Mayor and four Trustees,  as Defendants.  *Id*. at ¶ 11.  The Individual Defendants named in the Original Complaint[3] were Harvey Blau, the Mayor of the Village, and Fred J. Carrilo, Henry A. Alpert, Michael Wolf, and Harvey Simpson all members of the Board of Trustees of the Village.   *Id*. at ¶¶ 13-17.

In 1999, Plaintiffs purchased a five (5) acre property located at 267 Glen Cove Road in the Village to operate a religious institution and consecrate a shul as a place of worship.  *Id*. at ¶ 57.  In October 1999, Plaintiffs distributed invitations to a dedication ceremony to be held on November 14, 1999.  *Id*. at ¶ 58.  One week before the ceremony was to be held, the Village issued a "Notice" that Plaintiffs' religious activity at the Property would be a violation of Village ordinances. *Id*. at ¶ 59.  1n addition, the Village imposed a moratorium to suspend all building and the submitting of all applications for the indefinite future.  *Id*. at ¶ 60.

On March 19, 2001, the Village enacted certain amendments to the Village Code, which the parties refer to as the "Places of Worship Law" or "POW Law".  According to the POW Law, places of worship are only allowed by special permission of the Village Board of Trustees.  No places of worship are allowed unless the property is a minimum of twelve (12) acres and is located on Store Hill Road, Jericho Turnpike, Hillside Avenue or Glen Cove Road with a minimum of two hundred (200) feet of frontage.  *Id*. at ¶¶ 61-63.  Pursuant to the POW Law,

---

[3] As discussed above, all five of the Individual Defendants were dismissed from the action on August 3, 2009.  ECF No. 30.

Plaintiffs submitted a special exemption application and elevation plans, along with a site plan and plot plan (including all required supporting materials) to the Village in order to accommodate the needs of the planned religious activities at the Property.  On December 18, 2007, the Village issued a letter denying Plaintiffs' application because the Property was not at least twelve (12) acres.  *Id*. at ¶¶ 68, 69.  Plaintiffs initiated this lawsuit challenging the Village's determination and the constitutionality of the POW Law on December 17, 2008.  ECF No.1.  As noted above, the Original Complaint asserted fourteen causes of action against the Village and the five Individual Defendants.

B.  The Proposed Amended Complaint

The Proposed Amended Complaint contains seventeen causes of action, compared to fourteen in the Original Complaint.  Plaintiffs drop Causes of Action Ninth and Tenth, which were RLUIPA claims, and assert five new claims: retaliation (Cause of Action Ninth), improper search and seizure in violation of the fifth amendment(Cause of Action Tenth), unlawful search and seizure in violation of the fourth and fifth amendment by (Cause of Action Eleventh), unauthorized search (Cause of Action Twelfth) and retaliatory fraudulent inducement (Cause of Action Thirteenth).

The Proposed Amended Complaint asserts claims against the Village and the Board of Trustees and also reasserts claims against Carillo, Blau, Alpert, Wolf, and Simpson.  In addition, the Proposed Amended Complaint adds additional defendants Steven Greenberg, Elaine Greenberg, Cory Baker, Jefferey Brown, Marina Chimerine, Leslie Fastenberg, Edward Novak, Christopher Sauvigne, Andrew Weinberg, Michael Malatino, the Police Department of the Village and Police Officer Does 1-15.   In a footnote, Plaintiffs request that the new Defendants

6

named in the Proposed Amended Complaint be added as parties, and that the action resume against all Defendants named in the Original Complaint. Pl. Mem. at 10. Thus, the Eleventh and Twelfth counts from the Original Complaint (which are repeated as the Fourteenth and Fifteenth Causes of Action in the Proposed Amended Complaint), are once again part of the pleadings.

In addition to the allegations set forth in the Original Complaint, the Proposed Amended Complaint details events occurring since 2008, including Plaintiffs filing of a special permit application and Defendants positive SEQRA determination, the unauthorized searches of Plaintiffs' residence in 2019, unconstitutional stops of Plaintiff Konikov and his family in 2017, 2018 and 2019, and the denial of a certificate of occupancy for an out building constructed on the Property in 2019. Plaintiffs also seek to bolster their claims that the POW Law is unconstitutional with allegations relating to the Village's treatment of other religious institutions.

Shortly after the filing of the Original Complaint, Judge Hurley dismissed all claims against the original Individual Defendants and placed the remaining claims on administrative hold while the Plaintiffs filed a special use permit application for the development of the Property. As alleged in the Proposed Amended Complaint, following this ruling, Plaintiffs met with Village "officials, discussed plans and development issues, submitted and revised plans and related papers, and otherwise complied with the Village's requirements." PAC ¶ 192. Plaintiffs efforts to obtain a special use permit included meetings with Deputy Mayor Wolf, who occasionally was accompanied by Superintendent of Building Malatino. *Id*. at ¶195. On November 13, 2015, Plaintiff attempted to submit "to the Village the agreed application to develop the Chabad Property, including what Plaintiffs were told by Mayor Carillo . . . , and Deputy Mayor Wolf were approved plans for the full development." *Id*. at ¶ 200. According to

7

Plaintiffs, the Village rejected the special permit application because no previous denial had been issued. *Id*. at ¶ 201. The Village refused to issue a denial and refused to accept the special permit application for filing. *Id*. at ¶ 204. On December 2, 2015, Plaintiffs were instructed to begin the process again. *Id*. at ¶ 205. Plaintiffs argue "that involved Defendants in fact never intended to agree to anything with Plaintiffs. Each of the involved Defendants engaged in the exercise described from 2009 to 2015, . . ., solely to discourage and dissuade Plaintiffs from developing the Chabad Property within their rights." *Id*. at ¶ 213.

In December 2015, Defendants moved to dismiss the Original Complaint, and Plaintiffs' filed a motion to amend, however, following a conference with Judge Hurley, the parties agreed to work cooperatively together with the goal of ensuring that Plaintiffs would be able to file their special permit application. In 2016, Plaintiffs submitted an application for the construction of a Chabad. *Id*. at ¶ 225. In April 2019, the Village issued a positive SEQRA declaration requiring Plaintiffs to undergo a heightened assessment of its proposed land use. *Id*. at ¶ 298. Plaintiffs allege that non-religious applicants have not been subjected to the same SEQRA review. *Id*. at ¶¶ 33-34. On February 11, 2020, Defendants adopted a DEIS. *Id*. at ¶ 299. Plaintiffs estimate the cost for completion of the DEIS to exceed $250,000. *Id*. at ¶ 305. Plaintiffs allege that the requirement that the DEIS be completed is another "concocted pretextual and illegitimate reason[] to prevent, frustrate, delay, curtail, and restrict Plaintiffs' ability to use and develop the Chabad Property for long recognized religious uses." *Id*. at ¶ 311. The thrust of Plaintiffs' complaint with respect to this process is that the POW Law is unconstitutional, and that its application to land use applications made by Bethel United Pentecostal, Central Presbyterian Church, the Lubavitch and the Roman Catholic Diocese demonstrates its unconstitutionality. *Id*.

at ¶¶ 21-29; 37-40.  Plaintiffs rely on these allegations in support of their claims that the POW Law is unconstitutional and for civil conspiracy.

The Proposed Amended Complaint also alleges that in June 2017, February 2019 and August 2019, Michael Malatino, the Superintendent of Buildings for the Village, conducted unauthorized searches of the Property. *Id*. at ¶¶ 46, 47, 265.  Plaintiffs allege that as a result of the search in February 2019 Plaintiffs were issued an appearance ticket.  *Id*. at ¶ 265.  Plaintiffs contend that when the appearance ticket was served the officers appeared with full body armor, helmets and guns ready.  *Id*. at ¶ 268.  Plaintiffs contend that these searches were conducted and "Defendants issued, served, prosecuted the Appearance Ticket, and proceeded through trial in the Village's Municipal Court solely to intimidate, harass, and dissuade Plaintiffs from pursuing their rights to develop the Chabad Property for religious use."  *Id*. at ¶ 267.  Plaintiff seek to amend the complaint to add a claim for unauthorized search in violation of the Fourth Amendment (Cause of Action Twelfth) arising out of this conduct.

Additionally, Plaintiffs allege that in 2017, 2018 and 2019 Plaintiff Konikov and his family were overtly threatened by Village Police while walking home from Sabbath on Saturdays.  *Id*. at ¶53.  According to Plaintiffs, they were repeated stopped by police in patrol cars with lights flashing and sometimes sirens. *Id*. at ¶229.  In addition, Plaintiffs allege that on July 5, 2019, Village Police officers stopped Plaintiff Konikov on his way home from a religious service and physically attempted to force him into the car knowing that he was not permitted to travel by car on the Sabbath.  *Id*. at ¶ 238-257.  Plaintiffs seek to amend the complaint to add claims for retaliation (Cause of Action Ninth) and improper search and seizure (Cause of Action Tenth and Eleventh) arising out of this conduct.

Finally, Plaintiffs seek to supplement the complaint to include allegations relating to the March 2020 denial by the Village of a certificate of occupancy for a religious Mikvah built by Plaintiffs. *Id*. at ¶ 54. "A Mikvah is used for ritual cleansing, bathing, and purification separately by Jewish men and women. Many women observe its use before marriage, or after a menstrual cycle." *Id*. According to Plaintiffs, "Plaintiffs constructed the Mikvah for private use as an accessory to the residence on the Chabad Property occupied by Rabbi Konikov and his family. It is a single-story building with a basement, finished on each level for its intended use." *Id*. at ¶ 276. First, "Defendant Malatino performed a final inspection of the Mikvah in 2019" and "directed the Lubavitch to plant landscape screening and install irrigation, and to address what he determined to be precipitation drainage concerns around the Mikvah." *Id*. at ¶ 282. Next, Plaintiffs allege that in October 2019, Defendants decided "arbitrarily that the Village would require that that the Mikvah meet commercial or place of public assembly fire codes and declined to issue to the Lubavitch a certificate of occupancy." *Id*. at ¶¶ 11, 131-135, 275-297. Ultimately, according to Plaintiffs, Defendants denied the certificate of occupancy because "the religious use sought for the Chabad Property as a whole (if any ever is allowed) might make the Mikvah attractive for religious use and assembly by attendees of any Chabad facilities eventually permitted by the Village, and render it a place of public assembly." *Id*. at ¶ 55. Plaintiffs seek to amend the complaint to add claims for retaliation (Cause of Action Ninth) and fraudulent inducement (Cause of Action Thirteenth) arising out of this conduct. In additional, Plaintiffs rely upon the denial of the Mikvah certificate of occupancy in further support of their claim for civil conspiracy.

10

Defendants oppose the Plaintiffs' motion to amend arguing that the proposed amendment would be futile because "many of the proposed claims are time-barred, Plaintiffs' new claims for relief (Counts 9-13) should not be allowed as they do not sufficiently relate to the original pleadings to satisfy the requirements of Rule 15(c), and they are not ripe or do not pass muster under Rule 12(b)(6)." Def. Mem. at 4. In addition, "Defendants argue that the PAC does not cure the deficiencies in Plaintiffs' original pleading. [because] [t]he Court lacks subject matter jurisdiction with respect to Plaintiffs' claims related to the construction of the Chabad which are not ripe in view of the absence of a final decision on Plaintiffs' application." *Id*. Finally, Defendants contend that Plaintiff's motion to amend should be denied on the basis of bad faith and prejudice. *Id*. at 5.

## DISCUSSION

### I.    Standard of Review

#### A.    Jurisdiction

In response to Plaintiffs' motion to amend the complaint, Defendants have argued that Plaintiffs' constitutional, federal and state statutory claims arising from Plaintiffs' application to construct a place of worship and a Mikvah are not ripe for review in the absence of a final determination of Plaintiffs' land use application and therefore this Court lacks subject matter jurisdiction. Def. Mem. at 8. Ripeness is a jurisdictional inquiry. *Murphy v. New Milford Zoning Com'n*, 402 F.3d 342, 347 (2d Cir. 2005). A court should consider ripeness challenge first "since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined." *Rhulen*

11

*Agency, Inc. v. Ala. Ins. Guaranty Ass'n,* 896 F.2d 674, 678 (2d Cir. 1990); *see also Craig x. Saxon Mortg. Servs., Inc.*, No. 13-CV-4526 (SJF)(GRB), 2015 U.S. Dist. LEXIS 3819, 2015 WL 171234, at *4 (E.D.N.Y. Jan. 13, 2015) (quoting *Bobrowsky v. Yonkers Courthouse*, 777 F. Supp. 2d 692, 703 (S.D.N.Y. 2011)).  Plaintiffs bear the burden of establishing subject matter jurisdiction by a preponderance of the evidence.  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000); *Orthodox Jewish Coal. of Chestnut Ridge v. Vill. of Chestnut Ridge*, No. 19-CV-443 (KMK), 2021 U.S. Dist. LEXIS 62689 at *30, 2021 WL 1226930 (S.D.N.Y. Mar. 31, 2021). To determine subject matter jurisdiction, a district court may refer to evidence outside the pleadings. *Id*.

A facial challenge to the Court's jurisdiction requires the Court to accept all of a party's allegations as true.  *Latino Quimica-Amtex S.A. v. Akzo Nobel Chemicals B.V.,* No. 03 Civ. 10312, 2005 U.S. Dist. LEXIS 19788, 2005 WL 2207017, at *4 (S.D.N.Y. Sept. 8, 2005); *A.I.G. Asian Infrastructure Fund, L.P. v. Chase Manhattan Asia Ltd*., No. 02 Civ. 10034 (KMW), 02-cv-10034 (KMW), 2004 U.S. Dist. LEXIS 27334, at *4, 2004 WL 3095844 (S.D.N.Y. Mar. 25, 2004).

B.   **Motion to Amend**

Plaintiffs move to amend the complaint.  Under Rule 15(a), "[a] party may amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier."  Rule 15(a)(2).  "In all other cases, a party may amend its pleading only with the opposing party's

written consent or the court's leave.  The court should freely give leave when justice so requires."

Rule 15(a)(2).

Plaintiffs also seek to supplement the complaint.  Rule 15(d) provides in pertinent part that the court "may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence or event that happened after the date of the pleading to be supplemented."  Rule 15(d*); see Ke v. 85 Fourth Ave. Inc.*, No. 07 Civ. 6897 (BSJ) (JCF), 2009 U.S. Dist. LEXIS 8141, 2009 WL 185949, at *2 (S.D.N.Y. Jan. 22, 2009); *see also Unique Sports Generation, Inc. v. LGH-III, LLC*, No. 03 Civ. 8324 (JGK) (DF), 2005 U.S. Dist. LEXIS 22133, 2005 WL 2414452, at *4 (S.D.N.Y. Sept. 30, 2005) ("[a] motion to supplement pleadings under Rule 15(d) is properly made when a party seeks to plead events which have happened since the date of the pleading sought to be supplemented . . . or "when the movant seeks to assert claims arising from the new events")  (internal quotation marks and citations omitted).  The standard for evaluating a motion to supplement under Rule 15(d) is well settled:

> An application for leave to file a supplemental pleading is addressed to the discretion of the court, and permission should be freely granted where such supplementation will promote the economic and speedy disposition of the controversy between the parties, will not cause undue delay or trial inconvenience, and will not prejudice the rights of any other party.

*Bornholdt v. Brady*, 869 F.2d 57, 68 (2d Cir. 1989) (citations omitted).  Thus, "the Rule 15(d) standard is functionally identical to the standard set forth in Rule 15(a)."  *Instinet Inc. v. Ariel (UK) Ltd.,* 2011 U.S. Dist. LEXIS 109349, 2011 WL 4444086, at *2 n.1 (S.D.N.Y. Sept. 26, 2011) (citing *Gittens v. Sullivan*, 670 F. Supp. 119, 123-24 (S.D.N.Y. 1987)).

Supplemental relief "may include the addition of new defendants and new claims, if adequately related to the originally stated claims." *McLean v. Scully*, 1991 U.S. Dist. LEXIS

17695, 1991 WL 274327, *1 (S.D.N.Y. 1991); *see Carter v. Artuz*, 1998 U.S. Dist. LEXIS 17570, 1998 WL 782022, *2 (S.D.N.Y. 1998) (Rule 15(a) permits assertion of matters that were "either overlooked or unknown" at time of original pleading; Rule 15(d) enables a party to set forth in a supplemental pleading events that "have happened since the date of original pleading"). The threshold consideration for the court is whether "the supplemental facts connect [the supplemental pleading] to the original pleading." *Quaratino v. Tiffany & Co*., 71 F.3d 58, 66 (2d Cir. 1995); *see also United States v. Russell*, 241 F.2d 879, 882 (1st Cir. 1957) (concluding that a supplemental pleading "is designed to obtain relief along the same lines, pertaining to the same cause, and based on the same subject matter or claim for relief, as set out in the original complaint"); *Albrecht v. Long Island R.R*., 134 F.R.D. 40, 41 (E.D.N.Y. 1991) ("A supplemental pleading is designed to cover matters that occur subsequent to the filing of the complaint, but pertain to the original pleadings").

Plaintiffs also seek to add new parties.  While Plaintiffs fail to cite Rule 21, when a proposed amendment seeks to add new parties, the propriety of the proposed amendment is governed by that Rule which provides that "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party."  Rule 21; *see Addison v. Reitman Blactop, Inc.*, 283 F.R.D. 74, 79 (E.D.N.Y. 2011*); Savine-Rivas v. Farina*, CV-90-4335, 1992 U.S. Dist. LEXIS 11524, 1992 WL 193668, at *1 (E.D.N.Y. Aug. 4, 1992) (because the new complaint sought "to add not just new claims or updated facts[,] but also new parties[,]" along with Rule 15(a), Rules 20(a) and 21 were also involved).

In deciding whether to allow Plaintiffs to amend the complaint pursuant to Rule 15(a), supplement the complaint pursuant to Rule 15(d) or permit the addition of new defendants under

14

Rule 21, "courts apply the same standard of liberality afforded to motions to amend pleadings under Rule 15." *Addison*, 283 F.R.D. at 79 (citations and internal quotation marks omitted). "Thus, leave to amend a complaint . . . 'should be denied only because of undue delay, bad faith, futility, or prejudice to the non-moving party, and the decision to grant or deny a motion to amend rests within the sound discretion of the district court.'" *Id.* (quoting *DeFazio v. Wallis*, No. 05–CV–5712, 2006 WL 4005577, at *1 (E.D.N.Y. Dec. 9, 2006)).

Here, Defendants argue that the amendment is futile, is made in bad faith, and will prejudice the non-moving party.  An amendment is futile if the proposed claim could not withstand a motion to dismiss under Rule 12(b)(6).  *IBEW Local Union No. 58 Pension Trust Fund and Annuity Fund v. Royal Bank of Scotland PLC*, 783 F.3d 383, 389 (2d Cir. 2015).  The Supreme Court clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), in which the court set forth a two-pronged approach to be utilized in analyzing a motion to dismiss.  District courts are to first "identify [ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679.  Though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a [d]efendant has acted unlawfully." *Id.* at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007) (internal citations omitted)).

"In determining what constitutes undue prejudice, courts 'generally consider whether the assertion of the new claim or defense would (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction.'" *Oneida Indian Nation v. County of Oneida*, 199 F.R.D. 61, 80 (N.D.N.Y. 2000), (quoting *Monahan v. New York City of Corrections*, 214 F.3d 275 (2d Cir. 2000) (internal quotation marks and citation omitted)); *see also Soley v. County of Nassau*, No. 18-CV-377, 2021 U.S. Dist. LEXIS 76402 at * 11, 2021 WL 1554834, at *6 (E.D.N.Y. Apr. 20, 2021). "[T]he burdens of increased discovery, standing alone, do not suffice to show undue prejudice." *Partner Reins. Co. v. RPM Mortg., Inc*., No. 18-CV-5831, 2020 U.S. Dist. LEXIS 212519, 2020 WL 6690659, at *13 (S.D.N.Y. Nov. 13, 2020).

"[T]here is 'little case law within this Circuit to guide this court in terms of what constitutes bad faith as a ground for denying leave to amend.'" *Yeboah v. Bank of Am., N.A.*, No. 18-CV-2020, 2019 U.S. Dist. LEXIS 124629, 2019 WL 3388045, at *7 (D. Conn. July 26, 2019) (quoting *Oneida Indian Nation*, 199 F.R.D.at 80). However, "[c]ourts have found bad faith where 'a party is seeking leave to amend solely to gain a tactical advantage.'" *Soley v. County of Nassau*, No. 18-CV-377, 2021 U.S. Dist. LEXIS 76402, 2021 WL 1554834, at *6 (E.D.N.Y. Apr. 20, 2021) (quoting *Oneida Indian Nation*, 199 F.R.D.at 80). "[I]t is the defendants' burden to show bad faith." *Blagman v. Apple, Inc*., 307 F.R.D. 107, 113 n.4 (S.D.N.Y. 2015) (citing *Charney v. Zimbalist*, No. 07 Civ. 6272 (AKH) (GWG), 2014 U.S. Dist. LEXIS 32232, 2014 WL 963734, at *1 (S.D.N.Y. Mar. 12, 2014)).

II.  **Defendants' Motion to Strike the Declaration of Rabbi Aaron Konikov**

As a preliminary matter, Defendants move pursuant to Rule 12(f) to strike the reply Declaration of Rabbi Aaron Konikov submitted in support of Plaintiffs' motion for leave to amend the complaint on the grounds that the Konikov Declaration includes new facts not addressed in the Proposed Amended Complaint or motion to amend.  ECF No. 96-1.  In the alternative, Defendants request permission to submit a sur-reply.  Plaintiffs oppose the motion. ECF No. 97.

"[B]y its own terms, Rule 12(f) applies only to pleadings." *Hirsch v. Hui Zhen Huang*, No. 10 CIV. 9497 LTS, 2011 U.S. Dist. LEXIS 141877, 2011 WL 6129939, at *4 (S.D.N.Y. Dec. 9, 2011).  The Konikov Declaration in reply is not a "pleading" and are therefore is not within the purview of Rule 12(f).  *See Matthews v. Bell*, No. 6:18-CV-06460, 2019 U.S. Dist. LEXIS 38915, 2019 WL 1117512, at *1 (W.D.N.Y. Mar. 11, 2019); *Wright v. Belafonte*, No. 12 CIV. 7580 GBD RLE, 2014 WL 1302632, at *3 (S.D.N.Y. Mar. 31, 2014), aff'd, 687 F. App'x 1 (2d Cir. 2017) (Rule 12(f) "only applies to pleadings, which do not include motions to dismiss."); *see also* Rule 7(a) (defining "pleadings" as the complaint, the answer to the complaint, an answer to a counterclaim or crossclaim, a third-party complaint, an answer to a third-party complaint, and "if the court orders one, a reply to an answer").

Here, Defendants seek to strike a declaration attached to a reply memorandum of law in further support of a motion to amend the complaint.  A motion to amend is akin to a motion to dismiss, where all factual allegations are presumed true.  *See, e.g., Oguejiofo v. Open Text Corp.*, No. 09-cv-1278 (RWS), 2010 U.S. Dist. LEXIS 45418, at * 26, 2010 WL 1904022 (S.D.N.Y. May 10, 2010) (denying motion to strike objectionable testimony from declaration because a motion to amend is more akin to a motion to dismiss where all factual allegations are presumed

17

true).  However, "[c]ourts in this Circuit have made clear that a plaintiff may not shore up a

deficient complaint through extrinsic documents submitted in opposition to a defendant's motion

to dismiss."  *Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria*, 265 F.R.D. 106, 122-123

(S.D.N.Y. 2010) (citing cases).  Because Plaintiffs reply memorandum is most similar to an

opposition to a motion to dismiss, the Konikov Declaration shall not be considered by the Court

in connection with Defendants' opposition to Plaintiffs' motion to amend on the basis of futility.

The court may, however, consider the Konikov Declaration in connection with

Defendants' arguments challenging the court's jurisdiction to adjudicate certain of Plaintiffs'

claims.  *See Holland v. JPMorgan Chase Bank, N.A.*, No. 19-CV-233, 2019 U.S. Dist. LEXIS

146553, 2019 WL 4054834, at *6 (S.D.N.Y. Aug. 28, 2019) ("This limitation on the scope of the

Court's notice, however, does not apply to the motion to dismiss under Rule 12(b)(1)" ) (citing

*Makarova*, 201 F.3d at 113 ("In resolving a motion to dismiss for lack of subject matter

jurisdiction under Rule 12(b)(1), a district court . . . may refer to evidence outside the

pleadings.").  Defendants' argument that Plaintiffs' claims are not ripe is more akin to a motion

under Rule 12(b)(1), and therefore the Konikov Declaration may be considered for that purpose.

## III.    **Defendants' Jurisdictional Challenge**

The Court will first address Defendants' jurisdictional challenge to Plaintiffs' Proposed

Amended Complaint.  Defendants have argued that Plaintiffs' constitutional, federal and state

statutory claims arising from Plaintiffs' application to construct a place of worship and a Mikvah

are not ripe for review in the absence of a final determination of Plaintiffs' land use application

and therefore this Court lacks subject matter jurisdiction.  Def. Mem. at 8.  According to

Defendants,  Plaintiffs "cannot assert credibly that Defendants have refused to approve their

applications and that the refusal implicates their constitutional or statutory religious rights due to their failure to complete the application process." *Id*.  With respect to the denial of the certificate of occupancy for the Mikvah, Defendants argue that "[t]he Mikvah must comply with the requirements of the NYS Uniform Code applicable to places of public assembly as mandated by the Nassau County Fire Marshal because Plaintiffs seek to use it for their congregation, not solely for personal use by the family as originally contemplated. Plaintiffs have not availed themselves of their ability to apply to the New York Department of State for a modification of the requirements that Defendants are duty bound to enforce, as permitted under 19 NYCRR 1205.4 (providing that "[e]ach regional board of review shall have the power to vary or modify, in whole or in part, any provision or requirement of the Uniform Code")." *Id*. at 11.

"To be justiciable, a cause of action must be ripe—it must present a real, substantial controversy, not a mere hypothetical question." *Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 687 (2d Cir. 2013) (internal quotation marks omitted); *Murphy,* 402 F.3d at 348 ("Requiring a property owner to obtain a final, definitive position from zoning authorities evinces the judiciary's appreciation that land use disputes are uniquely matters of local concern more aptly suited for local resolution.").  "In the area of land use, the doctrine of ripeness is intended to avoid premature adjudication of administrative action." *Sunrise Dev., Inc. v. Town of Huntington*, 62 F. Supp. 2d 762, 770 (E.D.N.Y. 1999); *see also Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, 915 F. Supp. 2d 574, 599 (S.D.N.Y. 2013) ("[F]ederal courts do not sit as zoning boards of review and should be most circumspect in determining that constitutional rights are violated in quarrels over zoning decisions") (quoting *Spence v. Zimmerman*, 873 F.2d 256, 262 (11th Cir. 1989)).

19

"In order to establish whether a claim is ripe in the land-use context, and specifically where a property owner challenges local government action with respect to zoning determinations, 'the Court must apply the first prong of the analysis the Supreme Court articulated in *Williamson County Regional Planning Commission v. Hamilton Bank*, 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985).'" *Bar-Mashiah v. Inc. Vill. of Hewlett Bay Park*, CV 18-4633 (AKT), 2019 U.S. Dist. LEXIS 152348, 2019 WL 4247593 (E.D.N.Y. Sept. 6, 2019) (quoting *Islamic Cmty. Ctr. for Mid Westchester v. City of Yonkers Landmark Pres. Bd.*, 258 F. Supp. 3d 405, 416 (S.D.N.Y. 2017), aff'd, 742 Fed. App'x 521 (2d Cir. 2018); *see Murphy*, 402 F.3d at 347-49 (noting that the second prong of Williamson County applies only to takings claims based on land use because that prong addresses whether plaintiffs have received just compensation). A claim arising from a zoning dispute is ripe when a district court "can look to a final, definitive position from a local authority to assess precisely how [a land owner] can use [his] property." *Murphy*, 402 F.3d at 347.

The finality requirement applies "to zoning challenges based on the First Amendment rights of assembly and free exercise," as well as "claims alleging equal protection violations arising from local zoning disputes." *Lang v. Town of Tusten, NY*, No. 14-CV-4136, 2015 U.S. Dist. LEXIS 126856, 2015 WL 5460110, at *4-5 (S.D.N.Y. Aug. 6, 2015). Similarly, the finality requirement applies to Plaintiffs' RLUIPA claims. *Life Covenant Church, Inc. v. Town of Colonie*, 1:14-CV-1530 (LEK/DJS), 2017 U.S. Dist. LEXIS 148406, 2017 WL 4081907 (N.D.N.Y. Sept.13, 2017) ("[i]t is not 'necessary to distinguish the RLUIPA claim from the First Amendment Free Exercise claim when it comes to our ripeness inquiry'" )(quoting *Murphy*, 402 F.3d at 350). Plaintiffs' freedom of association and discrimination claims under the New York

20

Constitution are also subject to the same ripeness analysis. *Id.; see also Congregation Rabbinical Coll.*, 915 F. Supp. 2d at 596.  Thus, the finality requirement applies to Causes of Action First through Eighth and Fourteenth through Seventeenth asserted in the Proposed Amended Complaint.[4]

The Second Circuit has declined to extend the finality requirement to a First Amendment retaliation claim in the context of a land use challenge. *See Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 90 (2d Cir. 2002).  Thus, Defendants' ripeness argument does not apply to Plaintiffs' Ninth Cause of Action.  Additionally, the analysis regarding finality and ripeness is inapplicable to Plaintiffs' Tenth, Eleventh and Twelfth Causes of Action for unlawful search and seizure and Thirteenth Cause of Action for fraudulent inducement.[5]

Plaintiffs here concede that Defendants have not issued a final determination on their Application, however, contend that this action falls within a well-recognized exception to the finality rule arguing that obtaining a final decision on the relief sought would be futile.  Pl. Mem. at 3.  "[T]o invoke the futility exception, a plaintiff must demonstrate: (1) 'that [it] has filed at least one meaningful application,' and (2) 'the inevitability of refusal of the [ ] application, taking into consideration factors such as the defendants' hostility, delay and obstruction.'" *Congregation Rabbinical Coll.*, 915 F. Supp. 2d at 601 (quoting *Osborne v. Fernandez*, No. 06-CV-4127, 2009 U.S. Dist. LEXIS 27409, 2009 WL 884697, at *5 (S.D.N.Y. Mar. 31, 2009), aff'd, 414 Fed. App'x 350 (2d Cir. 2011)); *Roe v. Town of Mamakating,* 15-cv-

---

[4] Plaintiffs' claims for conspiracy set forth in the Fourteenth and Fifteenth Causes of Action are dependent upon the constitutional claims set forth in Causes of Action First through Sixth. *See, e.g., Homefront Org., Inc. v. Motz*, 570 F. Supp. 398 (E.D.N.Y. 2008) (dismissing conspiracy claims without prejudice where underlying constitutional claims were not ripe).

[5] Plaintiffs' claims relating to Defendants' refusal to grant a certificate of occupancy for the Mikvah are set forth in Causes of Action Ninth and Thirteenth and are not subject to the finality requirement.  Accordingly, Defendants' position with respect to the lack of ripeness of the Mikvah claims has not been addressed.

6682 (KBF), 2016 U.S. Dist. LEXIS 75665 (S.D.N.Y. June 9, 2016) ("In order to show futility, plaintiffs must show the inevitability of defendants' refusal of their applications, and that they have filed at least one meaningful application.") .  "Under this exception, certain procedures that a plaintiff normally would be required to pursue in order to receive a final determination may be excused if the plaintiff can demonstrate, by more than mere allegations, that they would be futile." *Honess 52 Corp. v. Town of Fishkill*, 1 F. Supp. 2d 294, 301 (S.D.N.Y. 1998) (citing *Del Monte Dunes at Monterey, Ltd. v. City of Monterey*, 920 F.2d 1496, 1501 (9th Cir. 1990*)); see also Murphy*, 402 F.3d at 349 ("[T]he finality requirement is not mechanically applied. A property owner, for example, will be excused from obtaining a final decision if pursuing an appeal to a zoning board of appeals or seeking a variance would be futile. That is, a property owner need not pursue such applications when a zoning agency lacks discretion to grant variances or has dug in its heels and made clear that all such applications will be denied."). Plaintiffs "must affirmatively prove the existence of subject matter jurisdiction, and it is therefore plaintiffs who bear the burden of demonstrating ripeness and, in this case, futility." *Roe v. Town of Mamakating,* 2016 U.S. Dist. LEXIS 75665  (citing *Murphy*, 402 F.3d at 347; *Greenlight Reinsurance, Ltd. v. Appalachian Underwriters, Inc*., 958 F. Supp. 2d 507, 518 (S.D.N.Y. 2013)).  The standard for futility is a high one; the doctrine only applies "when the government's actions are so unreasonable, duplicative, or unjust as to make the conduct farcical." *Sherman v. Town of Chester*, 752 F.3d 554, 563 (2d Cir. 2014).; *see also Dix v. City of New York*, No. 01 CIV. 6186 (LAP), 2002 U.S. Dist. LEXIS 18262, 2002 WL 31175251, at *6-7 (S.D.N.Y. Sept. 30, 2002) (describing futility exception as a "narrow" one).

Plaintiffs identify three sections of the Proposed Amended Complaint which purported support their claim of futility.  Paragraphs 36-43, which detail the difficulties other religious groups have had in navigating the POW Law process.  Paragraphs 187-216 which detail the negotiations between Plaintiffs and the deputy Mayor Wolf for a period of over six years, which resulted in what Plaintiffs believed were final plans, only to have the Village reject those plans.  Finally, Plaintiffs' point to Paragraphs 307-321 which allege that Defendants have acted willfully to prevent Plaintiffs from development of their property for discriminatory purposes.

First, Plaintiffs' reliance on allegations detailing the difficulties faced by other religious institutions to demonstrate futility is unpersuasive.  In this section of the Proposed Amended Complaint Plaintiffs allege that  "[t]hree (3) of the five (5) religious land use applicants that endured some or all of the assessment regime sued the Village and its officials in this Court or New York State Court (with the Diocese acting consecutively in each) to vindicate and secure the full harmless Free Exercise, rights of assembly, and similar rights protected by the laws of the United States and New York State."  PAC ¶ 40.  As recognized by Judge Hurley in *Roman Catholic Diocese of Rockville Ctr., New York v. Inc. Vill. of Old Westbury,* 09 CV 5195 (DRH) (ETB), 2011 U.S. Dist. LEXIS 14268, 2011 WL 666252, (E.D.N.Y. Feb. 14, 2011), a final determination is nevertheless  required before judicial intervention.

All that is left for Plaintiffs here is the submission of the final DEIS, a draft has already been submitted and public comments received.  ECF Nos. 81 & 82.  **Plaintiffs estimate the cost for completion of the DEIS to be approximately $250,000.  PAC ¶ 305.**  Judge Hurley rejected the Roman Catholic Diocese's argument that compliance with SEQRA would be futile in *Roman Catholic Diocese of Rockville Ctr., New York v. Inc. Vill. of Old Westbury,* 2011 U.S. Dist.

23

LEXIS 14268, noting that "[t]he Diocese has not submitted any case law in support of the notion that a municipality's requirement of an EIS (and the often lengthy process that follows) constitutes sufficiently delay as to invoke the futility exception." *Id*. at  2011 U.S. Dist. LEXIS 14268 at *57.  Similarly, here, Plaintiffs have failed to cite any authority supporting its position that requiring compliance with SEQRA demonstrates futility.  As recognized by the Court in *Homefront Org., Inc. v. Motz*, 570 F. Supp. 2d 398 (E.D.N.Y. 2008), "[i]n sum, this situation is far from being futile. Plaintiffs filed an application and the Planning Board issued a positive declaration pursuant to SEQRA, an interim decision which requires plaintiffs to submit an EIS. Although plaintiffs sense strong hostility to the proposal based upon alleged comments by [the Mayor] and others, it would still be premature for this Court to circumvent the agency process and make a determination without an ultimate decision by the Planning Board." *Id*. at 410.

Next, Plaintiffs point to Paragraphs 187-216 which detail the negotiations between Plaintiffs and the deputy Mayor Wolf for a period of over six years, which resulted in what Plaintiffs believed were final plans, only to have the Village reject those plans. While the process has been ongoing for many years, throughout that period, based upon Plaintiffs' own allegation negotiations have been ongoing. PAC ¶ 227.  Plaintiffs allege that the negotiations with Deputy Mayor Wolf resulted in a plan to be submitted in November 13, 2015. *Id.* at ¶ 200. Then, according to Plaintiffs, Mayor Carillo, Deputy Mayor Wolf, Trustee Weinberg,  and Building Superintendent Malatino met with Plaintiff Konikov in September 2015 in an effort to persuade him to "deliver his congregants' and other supporters' votes for Defendant Weinberg in a run-off election in September 2015," and when he failed to do so Plaintiffs allege that they have been penalized.  Pl. Reply Mem. at 3, citing Proposed Amended Complaint 228-297.

However, Plaintiffs own allegations demonstrate that deputy Mayor Wolf resigned in December 2015 and that Blau, Wolf, Alpert and Simpson, all resigned from the Board prior to November 2015.  Shapiro Decl. ¶ 11; *see also* PAC ¶¶ 91-110 .  Thus, while Plaintiffs allege that undue delay demonstrating futility was caused by Wolf, Blau and Weinberg, these individuals have not served on the board since 2015 and there is no factual support for Plaintiffs contention that their conduct should be imputed to the current board.  *See S&R Dev. Estates, LLC v. Bass*, 588 F. Supp. 2d 452, 463 (S.D.N.Y. 2008) ("Although [plaintiff] has faced opposition to its development plan from town officials and influential town groups, it has not shown that the prospect of refusal from the ZBA would be certain."); *Goldfine v. Kelly*, 80 F. Supp. 2d 153, 160-61 (S.D.N.Y. 2000) (allegations of open hostility by or conspiracy among defendants insufficient to show that refusal was certain).  Nevertheless, in 2017, following the Village's rejection of Plaintiffs' Application, and briefing on Plaintiffs' motion to amend and Defendants' motion to dismiss, Plaintiffs met with Defendants and Judge Hurley and agreed to work cooperatively to assure the filing of Plaintiffs' application.  *See* Electronic Order dated April 21, 2017.

Moreover, any claim of undue delay by the Plaintiffs is disingenuous in light of the regular status reports provided to the Court detailing the progress the parties had made in the application process.   In November 2019 the parties reported that

> the Applicant ("Plaintiff Lubavitch") has not yet finalized the "Draft Scope" and revised site plan required for the SEQRA review, the Draft Environmental Impact Statement ("DEIS") and for the Special Exception Permit.  Plaintiffs submitted a Draft Scope in or about August for the DEIS that the Board considered at its meeting on 9/16/2019.
>
>         *               *               *
>
> The Village hosted a public hearing for public comment regarding the Draft 'Scope' for the SEQRA review on September 16, 2019. Various issues were raised that indicated that the Draft Scope had to be revised. Most significantly, Applicant acquired an adjacent

parcel on August, 2018, and Applicant needs to clarify whether that parcel is to be included in the project. Also, it appears there is an easement from the Applicant's property to Bacon Road, a residential street. Applicant needs to respond to the Board's inquiry as to whether Applicant intends to use that easement for egress from the property to Bacon Road. The Board awaits input from Applicant and its professionals at Cameron Engineering regarding those issues. There is another date set for a Board meeting on November 18, 2019.  If the Applicant submits the revised site plan and revised Draft Scope prior to the November 18 meeting to allow time for its review by the Village's Consultants and public notice per law, the Board would consider it on November 18.

ECF No. 81.  Then, in February 2020, the parties reported that Plaintiffs "submitted, and the board approved," the Final Scope DEIS and that "[u]pon acceptance of the DEIS as complete, the Village Board of Trustees will continue the review, including appropriate public hearings." ECF No. 82.  Thus, although the process has been ongoing for several years, progress has been made and these allegations do not satisfy the narrow futility exception to the finality requirement.

Finally, Plaintiffs argue that they have established futility by demonstrating that Defendants have acted willfully to prevent Plaintiffs from development of the Property for discriminatory purposes.  To support this position, Plaintiffs allege that Defendants hostility and animus toward Plaintiffs is evidenced by Defendants refusal to change its conduct even after the numerous lawsuits brought by other religious institutions challenging the POW Law.  PAC ¶ 43.  In addition, in the Konikov Declaration, Plaintiff Konikov claims to have overheard a statement by Carrilo in 2020 indicating that the scope of the SEQRA assessment was intended to delay construction of the Chabad.  Konikov Dec. ¶¶ 35-37.  Plaintiffs also rely on statements in the Konikov Declaration which are detailed above, relating to his refusal to encourage his constituents to vote in favor of certain candidates. *Id.* at ¶¶ 19-32.  The remainder of Plaintiffs allegations are conclusory assertions, such as Plaintiffs assertion that "Defendants repeatedly

have concocted pretextual and illegitimate reasons to prevent, frustrate, delay, curtail, and restrict Plaintiffs' ability to use and develop the Chabad Property for long recognized religious uses," and "[t]he Village and presently involved individual Defendants and their consultants and attorneys have defined and begun to apply to the Lubavitch the comparably equivalent burdensome and improper SEQRA assessment."  PAC ¶¶ 308, 311.   Conclusory assertions such as these do not support a claim. *See MoreoverCountry View Estates @ Ridge LLC v. Town of Brookhaven*, 452 F. Supp. 2d 142, 154 (E.D.N.Y. 2006) ("conclusory assertions that defendants acted with malicious intent and bad faith in processing plaintiff's application in order to delay and obstruct" are insufficient to establish futility) (collecting cases).

With respect to Plaintiffs more specific allegations of hostility, the law is clear.  "Futility does not exist merely because of hostility to the developer's plans." *S&R Dev. Estates, LLC v. Bass,* 588 F. Supp. 2d 452, 460 (S.D.N.Y. 2008); *see Town of Mamakating*, 2016 U.S. Dist. LEXIS 75665 ("futility does not exist merely because the defendants are hostile to the plaintiffs' proposal"); *Kowalczyk v. Barbarite*, No. 08-CV-6992 (ER), 2012 U.S. Dist. LEXIS 138606, 2012 WL 4490733, at *9 (S.D.N.Y. Sept. 25, 2012) ("Hostility alone, while perhaps unjustifiable, does not make certain that a zoning variance would be opposed or rejected."), *Tri-State Video Corp. v. Town of Stephentown*, 1998 U.S. Dist. LEXIS 1899, 1998 WL 72331, at *4 (N.D.N.Y. Feb. 13, 1998) (noting that courts construe the futility exception narrowly, and the plaintiffs' claim that the Town and its officials were openly hostile to the plaintiffs' use of their property did not change the fact that the ZBA had not issued any ruling on the plaintiffs' proposed use and therefore the futility exception did not apply); *see also Ecogen, LLC v. Town of Italy*, 438 F. Supp. 2d 149, 161 (W.D.N.Y. 2006).

Plaintiffs rely on generalized allegations of hostility and stray remarks that, in large part, are conclusory or grounded in hearsay, and in any event largely do not support the broad conspiracy theory that Plaintiffs argue demonstrates that the Application will inevitably be rejected. "Courts have rejected parties' invocations of the futility exception where the allegations of hostility were at least as robust as those present here." *Town of Mamakating*, 2016 U.S. Dist. LEXIS 75665 (citing *Homefront Org., Inc.* 570 F. Supp. 2d at 408 (collecting cases, and finding that the Mayor's "statements that no project of the plaintiffs was 'happening in our town,' 'we are not like you people from Westhampton,' and for plaintiffs to 'move on.' insufficient to support a claim of futility); *see also, e.g., Dix v. City of New York*, No. 01 CIV. 6186 (LAP), 2002 U.S. Dist. LEXIS 18262, 2002 WL 31175251, at *8 (S.D.N.Y. Sept. 30, 2002) (finding facts inadequate to support the futility exception, where defendants acted with hostility towards plaintiffs and attempted to delay or discontinue plaintiffs' permit application through written letters and participation in hearings).  Because there is no indication that Defendants have used "repetitive and unfair procedures" or "engaged in a war of attrition" against Plaintiffs to avoid issuing a final decision, . . . the Court declines to invoke the futility exception required for Plaintiffs' claims to be deemed ripe for adjudication."  *Town & Country Adult Living, Inc. v. Vill./Town of Mount Kisco*, No. 17-CV-8586, 2019 U.S. Dist. LEXIS 50676, 2019 WL 1368560, at *17 (S.D.N.Y. Mar. 26, 2019) (quoting *545 Halsey Lane Props., LLC v. Town of Southampton,* No. 14-CV-800, 2015 U.S. Dist. LEXIS 79913, 2015 WL 3824050, at *4 (E.D.N.Y. June 19, 2015) (internal quotation marks omitted)

Plaintiffs rely on *Sherman v. Town of Chester*, 752 F.3d 554, 563 (2d Cir. 2014) in support of their position that completion of the SEQRA process would be futile.  In *Sherman*, the plaintiff had sought approval to use his land for over a decade, but "every time [he] submitted or was about to submit a proposal for [the property], the Town changed its zoning regulations . . . [even] retroactively issu[ing] a six month moratorium on development that appears to have applied only to Sherman's property." 752 F.3d at 562. He was "financially exhausted to the point of facing foreclosure and possible personal bankruptcy." *Id.* at 563. And, at oral argument in that case, "the Town's counsel could not name one way Sherman could have appealed any aspect of the Town's decade of maneuvers in order to obtain a final decision." *Id.* The Second Circuit held that, though "it is no simple task to distinguish procedures that are merely frustrating from those that are unfair or would be futile to pursue . . . when the government's actions are so unreasonable, duplicative, or unjust as to make the conduct farcical, the high standard is met." *Id.*; *see also Dean v. Town of Hempstead*, 163 F. Supp. 3d 59, 78 (E.D.N.Y. 2016) ("Although the Town has imposed several burdensome steps on [plaintiff], I cannot find that their actions have been 'so unreasonable, duplicative, or unjust,' that further applications by [plaintiff] would be futile") (quoting *Sherman*, 752 F.3d at 563).  Plaintiffs only complaint here is that the requirement that the DEIS be completed is another "concocted pretextual and illegitimate reason[] to prevent, frustrate, delay, curtail, and restrict Plaintiffs' ability to use and develop the Chabad Property for long recognized religious uses." *PAC* ¶ 311. As discussed above this allegation is insufficient to demonstrate that this matter fails within the narrow futility exception.   Under the circumstances alleged here, Plaintiffs have not met their high burden to show futility. *Dougherty*, 282 F.3d at 89.

29

Accordingly, the undersigned respectfully recommends that Plaintiffs' motion to amend with respect to Causes of Action First through Eighth and Fourteenth through Seventeenth be denied because the proposed amendments would be futile, as the claims asserted therein are not ripe for adjudication.

IV.    **Plaintiffs' Motion to Amend**

Plaintiffs seek leave to file a 229-page proposed Amended Complaint, containing 17 causes of action and naming fifteen individual defendants, five of whom were dismissed from this action in 2009, and also naming the Village Police Department and police officers as defendants.   ECF No. 92.  In addition to the jurisdictional challenge to ripeness, Defendants opposed the motion, arguing that the proposed amendment would be futile because "many of the proposed claims are time-barred, [and] Plaintiffs' new claims for relief (Counts 9-13) should not be allowed as they do not sufficiently relate to the original pleadings to satisfy the requirements of Rule 15(c)."  Def. Mem. at 4.  Finally, Defendants contend that Plaintiff's motion to amend should be denied on the basis of bad faith and prejudice.  *Id*.

A.    **Relation To The Original Complaint**

Defendants argue that Plaintiffs' proposed amendments to the complaint fail because "Plaintiffs do not – because they cannot - show that their new allegations – such as their allegations about Defendants' handling of a myriad of other land use decisions over a 25-year period (PAC ¶ 21-23; 29 n.3 & n.4; 32; 37-40) - relate back to the specific facts pled in the Complaint.  Instead, Plaintiffs broadly (and inaccurately) assert that the amendments

30

'arise from the same or similar facts, parties, relationships and circumstances as the original claims'" Def. Mem. at 5.  In addition, Defendants argue that "because the PAC's Ninth to Thirteenth Causes of Action, asserting claims that include retaliation under § 1983 and the RLUIPA, and Fourth and Fifth Amendment violations (PAC ¶¶ 358-415), are based on facts that arose after the Complaint was filed, they would constitute supplemental pleadings under Rule 15(d), not amendments.  These new claims should not be permitted as they do not relate sufficiently to the allegations in the Complaint."  Def. Mem. at 6.

### 1. Amendment to Add Allegations Regarding Other Religious Institutions to Existing Constitutional Claims

The Original Complaint challenges "discriminatory and unreasonable land use regulations and intentional conduct which have prohibited and continue to prohibit the Plaintiffs from building and operating a religious temple and facility that will include places of worship."  Original Compl. ¶ 1.  Plaintiffs' Proposed Amended Complaint alleges that "most of the acts and omissions connected with the Lubavitch involve an ongoing attempt by the Village and individual  Defendants to deny to the Lubavitch the rights alleged herein. . . Many of those acts and omissions toward Rabbi Konikov and the claims arising from them are distinct in their genesis and effects, including temporally, and stand independently from the religious land use claims and federal civil rights claims alleged through this Amended Complaint."  PAC ¶ 17. To the extent Plaintiffs seek to amend the Original Complaint to enhance the claims relating to the constitutionality of the POW Law, the undersigned respectfully recommends that the Court deny such motion since the Court lacks jurisdiction over those claims.

### 2. Supplemental Allegations To New Causes of Action

In the Proposed Amended Complaint, Plaintiffs seek to assert five new claims: retaliation (Count Nine), improper search and seizure in violation of the fifth amendment (Count Ten), unlawful search and seizure in violation of the fourth and fifth amendment by (Count Eleven), unauthorized search (Count Twelve) and retaliatory fraudulent inducement (Count Thirteen).   To support these claims Plaintiffs, add allegations that in 2017, 2018 and 2019 Plaintiff Konikov and his family were overtly threatened by Village Police while walking home from Sabbath on Saturdays.  *Id.* at  ¶53.  And that in June 2017, February 2019 and August 2019, Michael Malatino, the Superintendent of Buildings for the Village, conducted unauthorized searches of the Property. *Id.* at ¶¶ 46, 47, 265.  And, finally, Plaintiffs add allegations relating to the March 2020 denial by the Village of a certificate of occupancy for the religious Mikvah built by Plaintiffs.  *Id.* at  ¶ 54.  The addition of these claims arising out of events which occurred subsequent to the filing to the Original Complaint must be considered as a motion to supplement.

As noted above, the Original Complaint challenges "discriminatory and unreasonable land use regulations and intentional conduct which have prohibited and continue to prohibit the Plaintiffs from building and operating a religious temple and facility that will include places of worship."  Original Compl. ¶ 1.  Its focus is on the Town's enactment and application of the POW Law.  There is no reference any actions taken by the Village against the person of Plaintiff Konikov or his family, no reference to unauthorized searches and no discussion of the construction of a Mikvah, and any local regulations applicable to such construction.  Indeed, Plaintiffs recognize that "many of those acts and omissions toward Rabbi Konikov and the claims arising from them are distinct in their genesis and effects, including temporally, and

stand independently from the religious land use claims and federal civil rights claims alleged through" the Proposed Amended Complaint. PAC ¶ 17.  Nevertheless, Plaintiffs argue that "the supplement sought involves facts and claims infused with some material element of attempted, protected religious Free Exercise, or its pursuit.  This is of a piece with the allegations and claims in the Complaint."  Pl. Reply at 8.

As recognized by Plaintiffs, the test is whether the new allegations relate to the original pleading, not if specifics match.  *See Argus, Inc. v. Eastman Kodak Co*., 552 F.Supp. 589, 602 (S.D.N.Y. 1982).  While the Court agrees that Plaintiffs' factual allegations concerning the unconstitutional stops, unlawful searches, and the construction of the Mikvah may implicate protected religious free exercise that does not mean that the Original Complaint provided Defendants with adequate notice of Plaintiffs' new claims. The new allegations regarding unconstitutional stops, unlawful searches, and the construction of the Mikvah do not merely amplify or support Plaintiffs' claims concerning the POW Law. Instead, they present an entirely new claim for relief based upon facts not included in the original pleading. The Original Complaint alleged that the POW Law was unconstitutional and violated RLUIPA. The Proposed Amended Complaint, by contrast, seeks charge the Village with a host of other constitutional violations and state law claims wholly unrelated to the POW Law and arising out of actions taken subsequent to the filing of the Original Complaint.  "When parties move to add claims involving completely different factual allegations and legal theories from the underlying suit, courts may exercise their discretion to deny amendment 'in order to avoid unnecessary complexity and confusion.'*" Amusement Indus., Inc. v. Stern, No.* 07 Civ. 11586(LAK)(GWG), 2014 U.S. Dist. LEXIS 129275, 2014 WL 4460393, at *9 (S.D.N.Y. Sept. 11, 2014) (quoting

33

*Robinson v. Buffaloe & Assocs., PLC,* 2013 U.S. Dist. LEXIS 110338, 2013 WL 4017045, at *2 (M.D. Tenn. Aug. 6, 2013)); *see also Myers v. Saxton*, 9:20-CV-0465 (BKS/DJS), 2021 U.S. Dist. LEXIS 8128, 2021 WL 149062 (N.D.N.Y. Jan. 21, 2021) ("The retaliation claims plaintiff now seeks to assert . . . are separate and apart from those previously asserted claims and arise from defendant . . . recent conduct. Plaintiff's motion to supplement the amended complaint is denied"); *Mitchell v. Cuomo*, No. 17-CV-892, 2019 U.S. Dist. LEXIS 52666, at *6, 2019 WL 1397195 (N.D.N.Y. Mar. 28, 2019) ("The proposed First Amendment claims are neither related to nor pertain to the allegations in the operative pleading, thus providing a basis to deny amendment under Rule 15(d)"). Here, the Court finds the Plaintiffs' claims for retaliation, unlawful search and seizure and fraudulent inducement arising out of event occurring between 2017 and 2020 are separate and apart from the claims asserted in the Original Complaint challenging the POW Law.

Accordingly, the undersigned respectfully recommends that Plaintiffs' motion to amend the complaint should be denied to the extent Plaintiffs propose to add the claims contained in Cause of Actions Ninth through Thirteenth.

B.     Futility

Since the undersigned recommends that the Court find it lacks jurisdiction over the claims asserted by Plaintiffs in Causes of Action First through Eighth and Fourteenth through Seventeenth in the Proposed Amended Complaint because those claims are not ripe for adjudication, and recommends that the remaining claims in Causes of Action Ninth through Thirteenth in the Proposed Amended Complaint be deemed separate and apart from the claims

asserted in the Original Complaint, and, therefore, not properly asserted in this action, the undersigned recommends the Plaintiffs' motion to amend be denied in its entirety.[6]

## OBJECTIONS

A copy of this Report and Recommendation is being electronically served by the Court on the parties.  Any objections to this Report and Recommendation must be filed with the Clerk of the Court with a courtesy copy to the undersigned within 14 days.  Failure to file objections within this period waives the right to appeal the District Court's Order.  See 28 U.S.C. § 636(b)(1); Fed R. Civ. P 72; *Mejia v. Roma Cleaning, Inc*., No. 17-3446, 2018 U.S. App. LEXIS 28235, 2018 WL 4847199, at *1 (2d Cir. Oct. 5, 2018) ("Plaintiff has waived any objections to the Magistrate's finding" by failing to timely object); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.,* 596 F.3d 84, 92 (2d Cir. 2010); *Beverly v. Walker,* 118 F.3d 900, 902 (2d Cir. 1997).

Dated: Central Islip, New York
       July 7, 2021

_____/s/_____
ARLENE R. LINDSAY
United States Magistrate Judge

---

[6] In light of this recommendation, the Court has not addressed Defendants' arguments regarding futility, prejudice or bad faith.