**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------X
LUBAVITCH OF OLD WESTBURY, INC.
and RABBI AARON KONIKOV,

                        Plaintiffs,

        v.

INCORPORATED VILLAGE OF OLD
WESTBURY, NEW YORK,

                      Defendant.
---------------------------------------------------------X

                    **REPORT AND**
                    **RECOMMENDATION**

          2:08-CV-05081 (GRB) (LGD)

**LEE G. DUNST**, Magistrate Judge:

      This action has been pending for more than fourteen years and involves factual allegations dating back to 1994.  Over that time, numerous law firms have come and gone on behalf of both parties.  The case has been assigned and reassigned to four District Judges (Judges Thomas C. Platt, Denis R. Hurley, Joan M. Azrack, and currently Gary R. Brown) and four Magistrate Judges (Judges A. Kathleen Tomlinson, E. Thomas Boyle, Arlene R. Lindsay, and currently the undersigned).  In the past, this case had thirty-one different defendants—three entities, thirteen named public officials (both in their individual and official capacities), and fifteen "John Doe" police officers.  Currently, there is only one remaining defendant: the Incorporated Village of Old Westbury, New York ("Village" or "Defendant").[1]

      Since 2008, Plaintiffs Lubavitch of Old Westbury, Inc. ("Lubavitch") and Rabbi Aaron Konikov ("Rabbi Konikov;" together with Lubavitch, "Plaintiffs") have alleged that Village officials discriminated against Plaintiffs based on their religion by preventing construction of a

---

[1] Pursuant to Judge Brown's March 23, 2023 Order, adopting the undersigned's Report and Recommendation (Electronic Case File number ("ECF No.") 169), all of Plaintiffs' claims were dismissed against all individual defendants, the Old Westbury Police Department, and The Board of Trustees of The Incorporated Village of Old Westbury.

religious institution in the Village.  *See generally* Second Amended Complaint ("SAC"), Electronic Case File number ("ECF No.") 110.  Before this Court, pursuant to the September 21, 2023 referral from the Honorable Gary R. Brown is the Village's latest Motion to Dismiss ("Motion").  *See* ECF No. 181.  For the reasons set forth below, the undersigned respectfully recommends that the Court grant in part and deny in part the Motion.

## I.    BACKGROUND

Since this case was filed in 2008, there have been three lengthy opinions previously issued by three different judges.  *See* ECF No. 104, July 7, 2021 Report and Recommendation (Judge Lindsay); ECF No. 109, September 30, 2021 Order Adopting in Part Report and Recommendation (Judge Hurley); ECF No. 169, February 7, 2023 Report and Recommendation (the undersigned).  The Court therefore will not repeat all of the facts in detail here and will assume the parties' familiarity with them.  *See Precision Trenchless, LLC v. Saertex multiCom LP*, No. 19-CV-0054, 2022 WL 594096, at *1 (D. Conn. Feb. 28, 2022) (adopting similar approach).  The Court will, however, provide a summary of the relevant facts and procedural background.  *See Lubavitch of Old Westbury, Inc. v. Inc. Vill. of Old Westbury*, No. 08-CV-5081, 2021 WL 4472852, at *1 (E.D.N.Y. Sept. 30, 2021) (Hurley, J.) ("Lubavitch II") (adopting approach taken by Judge Hurley, who explained that these circumstances "lend themselves to the Background Section interweaving the merits with the procedure").

By way of background, this action concerns a decades-long attempt to build an Orthodox Jewish place of worship on a piece of property in the Village of Old Westbury.  Since 1999, Plaintiffs have been attempting to build a temple on its property to impart religious education and provide religious services and fellowship.  SAC ¶¶ 14, 57-58, 60, 78-79.  Along the way, Plaintiffs have met considerable resistance from the Village, particularly due to the enactment of

a so-called "Places of Worship Law" ("POW Law") in March 2001. *Id.* ¶¶ 22, 64. The POW Law requires properties in the Village to meet certain conditions before they can be developed for religious use. *Id.* ¶¶ 64, 162.

Since the enactment of the POW Law more than twenty years ago, there has been a constant tug-of-war between Plaintiffs and Defendant. Plaintiffs have applied unsuccessfully multiple times for religious-use permits. *Id.* ¶¶ 60-61, 68, 190, 240-44. Plaintiffs also allege multiple instances of misconduct by the Village and others who represent the Village, including, preventing Rabbi Konikov from inviting guests into his home for prayer (*id.* ¶¶ 81-82, 174-74); issuing a moratorium prior to the enactment of the POW Law to "discourage" pending religious land use applications (*id.* ¶¶ 149-50); attempting to enlist Rabbi Konikov's support in an election in exchange for a less intensive review under the New York State Environmental Quality Review Act ("SEQRA") (*id.* ¶¶ 221-32); requiring Plaintiffs to start their land use application from the beginning (*id.* ¶ 205); performing various police stops and searches of Rabbi Konikov, his family, and his home (*id.* ¶¶ 47, 245-74); and so-called "bait-and-switch tactics" relating to Plaintiffs' Mikvah (a building for ritual cleansing, bathing, and purification associated with Jewish religious ceremonies) (*id.* ¶¶ 292-314). *See Lubavitch II*, 2021 WL 4472852, at *13-15 (Judge Hurley's discussion of Defendant's alleged "unfair and unreasonable" conduct). The parties have also been involved in multiple unsuccessful negotiations in an attempt to resolve their disputes. SAC ¶¶ 67, 189, 193.

The case was placed on administrative hold by Judge Platt in 2009. ECF No. 30. Judge Hurley lifted that hold eleven years later, so that Plaintiffs could file a motion to amend the original complaint. *See* July 6, 2020 Order. After the parties briefed the motion to amend, Magistrate Judge Lindsay (to whom the motion had been referred) issued a Report and

Recommendation on the motion. *Lubavitch of Old Westbury, Inc. v. Bd. of Trustees of Vill. of Old Westbury*, No. 08-CV-5081, 2021 WL 4756093 (E.D.N.Y. July 7, 2021), *report and recommendation adopted in part, rejected in part sub nom. Lubavitch of Old Westbury, Inc. v. Inc. Vill. of Old Westbury*, No. 08-CV-5081, 2021 WL 4472852 (E.D.N.Y. Sept. 30, 2021) ("*Lubavitch I*"). Judge Lindsay recommended denial of Plaintiffs' motion to amend because she found that the proposed amendments were not ripe for adjudication. *See id.* at *14. Because she found that the Court lacked jurisdiction over the amended claims, she did not address Defendants' arguments regarding futility. *See id.* at *16 n.6.

Thereafter, both parties filed objections with Judge Hurley who, on September 30, 2021, overruled portions of Magistrate Judge Lindsay's ruling in *Lubavitch I*, and granted Plaintiffs leave to file the SAC. *See Lubavitch II*, 2021 WL 4472852, at *20. In that decision, Judge Hurley explicitly ruled that Plaintiffs' claims were ripe for adjudication (over Defendants' objections). *Id.* at *12, 15. However, Judge Hurley did not address whether the amendments were futile, and instead, allowed Defendants to seek to move to dismiss the SAC in the future pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See id.* at *19-20.

On October 20, 2021, Plaintiffs filed the 237-page SAC against multiple defendants that is the subject of the current Motion. *See* SAC. The seventeen causes of action asserted in the SAC against the Village Defendant are:

> (1) violation of the right to Free Exercise under the First and Fourteenth Amendments, brought under 42 U.S.C. § 1983 ("Section 1983");
>
> (2) violation of the right to Free Speech and Free Association under the First and Fourteenth Amendments, brought under Section 1983;
>
> (3) violation of the right to Freedom of Association under the First and Fourteenth

Amendments, brought under Section 1983;

(4) violation of the right to Equal Protection under the Fourteenth Amendment, brought under Section 1983;

(5) violation of the right to Due Process under the Fourteenth Amendment, brought under Section 1983;

(6) substantial burden on religious exercise in violation of the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc(a);

(7) discrimination against an assembly or institution on the basis of religion in violation of RLUIPA, 42 U.S.C. § 2000cc(b)(2);

(8) imposition of a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution, in violation of RLUIPA, 42 U.S.C. § 2000cc(b)(1);

(9) retaliation against the exercise of First, Fourth, Fifth, and Fourteenth Amendment rights, brought under Section 1983;

(10) unconstitutional search and seizure (regarding various instances in which the Village Police Department stopped Rabbi Konikov as he walked home on the Sabbath) in violation of the Fourth and Fifth Amendments, brought under Section 1983;

(11) unconstitutional search and seizure (regarding the July 5, 2019 occasion in which the Village Police Department stopped Rabbi Konikov) in violation of the Fourth and Fifth Amendments, brought under Section 1983;

(12) unauthorized search (of Plaintiffs' property) in violation of the Fourth Amendment, brought under Section 1983;

(13) retaliatory fraudulent inducement in violation of RLUIPA and Section 1983;

(14) civil conspiracy in violation of 42 U.S.C. § 1985(3);

(15) failure to prevent interference with civil rights in violation of 42 U.S.C. § 1986;

(16) violation of rights under New York State Constitution Article I Sections 3, 8, 9, 11; and

(17) discrimination in violation of New York Civil Rights Law § 40-c.[2]

On August 10, 2022, a group of defendants filed a motion to dismiss the SAC. ECF No. 160. These defendants included the individually-named defendants in their personal capacity and the Village Police Department. On the same day, a different law firm, representing a different group of defendants (the Village, the Board of Trustees, and the individual defendants in their official capacity), filed a second motion to dismiss. ECF No. 162. On November 10, 2022, Judge Brown referred both motions to the undersigned. November 10, 2022 Order. On February 7, 2023, the undersigned issued a Report and Recommendation that recommended that the first motion to dismiss (ECF No. 160) be granted in its entirety, and thus dismissing all claims against all the individual defendants and the Police Department of the Incorporated Village of Old Westbury, New York and also *sua sponte* dismissing all claims against the Board of Trustees. *See Lubavitch of Old Westbury, Inc. v. Inc. Vill. of Old Westbury*, No. 08-CV-5081, 2023 WL 6521621, at *1 (E.D.N.Y. Feb. 7, 2023) ("*Lubavitch III*"). The undersigned also denied without prejudice the second motion (ECF No. 162) because "the parties' bloated filings [a total of nearly 900 pages of briefs, declarations, and exhibits] violate[d] the letter and spirit of Judge Hurley's 4/21/2022 Order, as well as the Local Rules." February 7, 2023 Report and Recommendation (text order). After objections were filed to both Report and Recommendations,

---

[2] Plaintiffs state in their opposition papers that they "previously withdrew the Sixteenth and Seventeenth Causes of Action in the SAC." ECF No. 181-8 ("Pl. Mem.") at 25. Therefore, the Court recommends dismissal of Counts 16 and 17.

Judge Brown adopted in its entirety the undersigned's Report and Recommendation on the first motion. *See* First March 23, 2023 Order (adopting *Lubavitch III*). Judge Brown also adopted in its entirety the undersigned's Report and Recommendation on the second motion, and ordered the Village (the remaining defendant, as a result of Judge Brown's earlier order adopting the undersigned's decision in *Lubavitch III*) to resubmit its motion to dismiss with substantially reduced briefing and set a schedule. *See* Second March 23, 2023 Order.

On May 12, 2023, the Village submitted the revised Motion presently before the Court. ECF No. 181. On September 21, 2023, Judge Brown then referred the Motion to the undersigned. *See* September 21, 2023 Order.

## II.    LEGAL STANDARD

Courts evaluate motions to dismiss under Rule 12(b)(6) by determining whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). That standard requires the Court to accept as true all well-pled factual allegations in the SAC and consider attachments to and documents incorporated by reference in the SAC. *See Gamm v. Sanderson Farms, Inc.*, 944 F.3d 455, 462 (2d Cir. 2019). Accordingly, "[t]he merits as alleged in the SAC are taken as true for the purposes of this Order." *Lubavitch II*, 2021 WL 4472852, at *1. While the Court accepts the SAC's well-pled allegations as true, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *see also Gamm*, 944 F.3d at 462 (explaining that a complaint must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Determining whether the SAC states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and

common sense." *Iqbal*, 556 U.S. at 679.

"When matters outside the pleadings are presented in response to a 12(b)(6) motion, a district court must either exclude the additional material and decide the motion on the complaint alone or convert the motion to one for summary judgment under Fed. R. Civ. P. 56 and afford all parties the opportunity to present supporting material." *Friedl v. City of New York*, 210 F.3d 79, 83 (2d Cir. 2000) (quoting *Fonte v. Bd. of Managers of Cont'l Towers Condo.*, 848 F.2d 24, 25 (2d Cir. 1988)). Applying this principle, the Court declines to consider the declarations submitted by Plaintiffs, ECF Nos. 181-6-7 (Declarations of Michael A. Cedrone and Rabbi Aaron Konikov), and by Defendant, ECF Nos. 181-1-4 (Declarations of Fred J. Carillo, Michael Malatino, Michael H. Sahn, and Peter T. Shapiro). *See, e.g.*, *Lubavitch III*, 2023 WL 6521621, at *15 (discussion of Judge Hurley's use of this approach in this case); *Koehler v. Metro. Transp. Auth.*, 214 F. Supp. 3d 171, 174 (E.D.N.Y. 2016) (same).[3]

## III.   DISCUSSION

In support of the Motion, Defendant raises two issues: (1) Defendant renews its argument previously addressed and rejected by Judge Hurley in *Lubavitch II* that some of Plaintiffs' claims (Counts 1-8 and 14-17) are not ripe and should be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1),[4] and (2) Defendant also argues that Counts 2-4, 6-12, and 14-17 should be dismissed for failure to state a claim pursuant to Rule 12(b)(6).[5] *See* ECF No.

---

[3] Defendant purports to submit declarations to support its "factual challenge" to subject matter jurisdiction, arguing that Plaintiffs' claims are not ripe for adjudication. *See* ECF No. 181-5 ("Def. Mem.") at 1. Plaintiff submits its declarations in response. Pl. Mem. at 1. For the reasons stated in the Court's analysis of Defendant's ripeness argument (*see infra* Part III.A), the Court rejects Defendant's "factual challenge" in light of Judge Hurley's prior decision on this topic in *Lubavitch II*, and thus, will not consider the supporting material submitted by either party.

[4] Defendant first raised this ripeness argument in its previous opposition to Plaintiffs' Motion to Amend the Complaint. ECF No. 93 at 8.

[5] On October 19, 2023, the Court ordered Defendant to file a supplemental submission addressing (1) its ripeness argument, and (2) the bases for the Motion. ECF. No. 183. Specifically, because of the "disorganized

181-5 ("Def. Mem.").  For the reasons stated below, the Court recommends granting the Motion

in part and denying the Motion in part.

### A.     Defendant's Rule 12(b)(1) Ripeness Argument

As they did previously with Judges Hurley and Lindsay, Defendant once again argues

that Plaintiffs' land use claims (Counts 1-8 and 14-17) are not ripe for adjudication.  Def. Mem.

at 8-13.  According to Defendant, Plaintiffs "have not shown and cannot show" that their pursuit

of a final definitive position from the Village, regarding how they can use their property, would

be futile, consistent with the Second Circuit's ruling in *Murphy v. New Milford Zoning Comm'n*,

402 F.3d 342 (2d Cir. 2005).  Def. Mem. at 11.  Plaintiffs counter that Judge Hurley "found

decisively" that their claims are ripe.  ECF No. 181-8 ("Pl. Mem.") at 10; *Lubavitch II*, 2021 WL

4472852, at *11-15.  Further, they argue that Defendant's argument is a "tardy motion for

reconsideration."  Pl. Mem. at 10-12.  After supplemental briefing ordered by the undersigned on

this particular issue, Defendant argues that the law of the case doctrine, and thus, Judge Hurley's

---

nature of Defendant's submissions and Defendant's failure to consistently refer to each count by number in its motion papers," the Court ordered Defendant to clarify which Counts it was moving to dismiss under Rule 12(b)(1) and which Counts it was moving to dismiss under Rule 12(b)(6).  *Id.* at 2.  The Court ordered Defendant to fill out a chart with citations to pages in its earlier briefs, and Defendant purported to do so.  ECF No. 184 at 4-5.  The Court then ordered Plaintiffs to respond to Defendant's submission (*see* November 9, 2023 Order), and Plaintiffs did so (ECF No. 185).  Unsurprisingly, there is a disagreement between the parties (and the Court) about which counts Defendant actually moved to dismiss under Rule 12(b)(6).  After a careful examination of Defendant's original papers in support of its Motion, the Court disagrees with portions of Defendant's supplemental chart (ECF No. 184 at 4-5).  Despite their after-the-fact explanations, the Court finds that Defendant *did not* move to dismiss Counts 1, 5, and 13 under Rule 12(b)(6) in its earlier briefs in support of the Motion.  Defendant cites to page one of its initial brief for evidence that it allegedly moved to dismiss Counts 1, 5, and 13 under Rule 12(b)(6), but the Court is unconvinced.  In its opening brief, Defendant states that "Counts 1-8 and 14-17 (the 'Land Use Claims') should be dismissed based on lack of subject matter jurisdiction pursuant to Fed.R.Civ.P 12(b)(1), Count 13 . . . should also be dismissed on jurisdictional grounds, the remaining counts [9-12] should be dismissed for failure to state a claim pursuant to Fed.R.Civ.P 12(b)(6), and to the extent Counts 2-4, 6-8, and 14-17 are not dismissed on jurisdictional grounds, they should be dismissed for failure to state a claim."  Def. Mem. at 1.  Despite what Defendant now puts in its explanatory chart, the Court sees nothing in the above statement to suggest that Defendant ever sought to dismiss Counts 1, 5, and 13 under Rule 12(b)(6).  In fact, Defendant explicitly *excluded* those counts in its request to dismiss under Rule 12(b)(6).  In addition, Defendant cites to other pages in its brief to show that it allegedly moved to dismiss Counts 1, 5, and 13 under Rule 12(b)(6), but the Court similarly sees nothing on those pages where Defendant even mentioned Counts 1, 5, and 13 (with the exception that Defendant did discuss Count 13 on page eight in its Reply Brief (ECF No. 181-9, "Def. Rep.")).  Therefore, the Court finds that Defendant did not move to dismiss Counts 1, 5, and 13 under Rule 12(b)(6) in their original briefing in support of the Motion and declines to rule on any such untimely and improper motion that was never properly brought.

decision in *Lubavitch II*, does not apply to challenges to subject matter jurisdiction. ECF No. 184 at 1-2. Defendant further claims that the present challenge is a "*factual* challenge" to subject matter jurisdiction, giving it the ability to offer additional evidence that it did not present to Judge Hurley in its earlier "*facial* challenge." *Id.* at 1 (emphasis added). Plaintiffs, however, argue that the law of the case doctrine applies here because (1) the ripeness issue is a "prudential determination" rather than a jurisdictional rule, and (2) there has been no change in law or new evidence presented that was not present during Defendant's first ripeness challenge which was rejected by Judge Hurley. ECF No. 185. The Court agrees with Plaintiffs and finds that Judge Hurley's earlier ripeness ruling in *Lubavitch II* is the law of the case.

In 2021, Judge Hurley found that Plaintiffs' land use claims were ripe. *See Lubavitch II*, 2021 WL 4472852, at *11-15. Judge Hurley concluded that Plaintiffs' facial challenges to the POW Law were ripe because such challenges are ripe the moment the challenged law is passed. *See id.* at *11-12 (citing *Sunrise Detox V, LLC v. City of White Plains*, 769 F.3d 118, 123 (2d Cir. 2014)). Thus, because Plaintiffs' land use claims "incorporate this facial challenge," Plaintiffs' claims were ripe. *Lubavitch II*, 2021 WL 4472852, at *12. Judge Hurley also held that Plaintiffs' as-applied challenges were ripe because Plaintiffs had shown that pursuit of a final decision from the Village regarding its land use application (consistent with the Supreme Court's decision in *Williamson Cnty. Reg'l Plan. Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985), and the Second Circuit's application of *Murphy* in *Sherman v. Town of Chester*, 752 F.3d 554 (2d Cir. 2014)) was futile. *See Lubavitch II*, 2021 WL 4472852, at *12-15 (holding that Plaintiffs satisfied the "*Murphy*-futility" exception to *Williamson*). Judge Hurley stated:

> The Court, after *de novo* review, concludes the facts here sufficiently invoke the same concerns animating *Sherman's* application of the *Murphy*-futility exception. The

> land-use procedures Plaintiffs have endured are not just merely frustrating but unfair and unreasonable. The Court thus declines to adopt the R&R's recommendation and holds that Plaintiffs need not obtain a final decision before bringing their as-applied challenges in the Land-Use Claims.

*Id.* at *13. Lastly, Judge Hurley foreclosed exactly what Defendant now attempts to do by raising the ripeness issue again in a purported Rule 12(b)(1) motion: "[t]o be clear, the Court makes no finding at this time regarding the plausibility or timeliness of any of Plaintiffs' seventeen causes of action against any Defendant . . . and Defendants may re-raise these arguments *in their FRCP 12(b)(6) motion*." *Id.* at *19 (emphasis added) (citations omitted).

Defendant now wants another bite of the same ripe apple. This Court, however, will not afford Defendant this opportunity to raise its stale arguments. It is undisputed that Defendant did not file a motion for reconsideration with Judge Hurley regarding his decision in *Lubavitch II*. *See Geo-Grp. Commc'ns, Inc. v. Shah*, No. 15-CV-1756, 2020 WL 5743516, at *14 (S.D.N.Y. Sept. 25, 2020) (finding a delay of more than fourteen months significant in denying a motion for reconsideration); *see also* Local Civil Rule 6.3 "Motions for Reconsideration or Reargument" (requiring a notice of a motion for reconsideration to be served within fourteen days after the Court's determination of the original motion). Additionally, and more significantly, Defendant offers no reason why it could not have made this exact "factual challenge" to ripeness over three years ago with Judge Hurley. In fact, the evidence now submitted by Defendant, which dates back to the 1990s, does not involve anything new. For example, Defendant submits the Declaration of Michael Malatino, in which he discusses events that occurred from 2001 (ECF No. 181-2 ¶ 6) through March 2020 (*id.* ¶ 12). Defendant also submits a Declaration of Fred Carillo, in which he recounts events that occurred from 2000 (ECF No. 181-4 ¶ 5) through February 2020 (*id.* ¶ 14). As Defendant opted just for a *facial* challenge in 2020, Defendant does not now get to assert a challenge in 2023 (based on stale evidence) to try to get around Judge

11

Hurley's opinion on ripeness in *Lubavitch II. See, e.g.*, *Schleifer v. Lexus of Manhattan*, No. 17-CV-8789, 2019 WL 4640055, at *6 (S.D.N.Y. Sept. 24, 2019) (denying motion to dismiss where defendant "effectively reiterate[d] the same arguments presented to the Court on Plaintiff's motion to amend"); *Hamlen v. Gateway Energy Servs. Corp.*, No. 16-CV-3526, 2018 WL 1568761, at *2 (S.D.N.Y. Mar. 29, 2018) (considering the judge's prior "thorough and well-reasoned twenty-five page opinion," holding that "defendant had a full and fair opportunity to litigate," where he "advance[d] substantially the same arguments," under a similar standard); *Melito v. Am. Eagle Outfitters, Inc.*, No. 14-CV-2440, 2016 WL 6584482, at *2 (S.D.N.Y. Nov. 7, 2016) (denying "nearly identical" arguments where the two motions were "decided under an identically-worded standard").

"The law of the case doctrine counsels a court against revisiting its prior rulings in subsequent stages of the same litigation." *Mazzei v. Money Store*, No. 22-1959, 2023 WL 6784415, at *3 (2d Cir. Oct. 13, 2023). While the doctrine, "does not rigidly bind a court to its former decisions, [it] cautions that 'litigants [who] once battled for the court's decision . . . should neither be required, nor without good reason permitted, to battle for it again.'" *Id.* (quoting *Zdanok v. Glidden Co., Durkee Famous Foods Div.*, 327 F.2d 944, 953 (2d Cir. 1964)). A court "may depart from the law of the case 'only when there are "cogent" and "compelling" reasons for doing so.'" *United States v. Mackey*, No. 21-CR-80, 2023 WL 6879613, at *20 (E.D.N.Y. Oct. 17, 2023) (quoting *New York v. Adamowicz*, 932 F. Supp. 2d 340, 345 (E.D.N.Y. 2013)). Those reasons include "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Esposito v. Suffolk Cnty. Cmty. Coll.*, No. 21-CV-521, 2023 WL 192671, at *2 (2d Cir. Jan. 17, 2023).

Defendant cites several cases to support its argument that questions of subject matter

jurisdiction "generally" are exempt from the law of the case doctrine.  ECF No. 184 at 2.  The undersigned, however, is unconvinced by Defendant's argument that the Court should ignore Judge Hurley's *Lubavitch II* decision and not follow it as the law of the case.  As Plaintiffs point out (ECF No. 185 at 2) and as Judge Hurley noted, the ripeness issue in land use disputes is a "prudential rather than a jurisdictional rule." *Lubavitch II*, 2021 WL 4472852, at *12 (quoting *Sherman v. Town of Chester*, 752 F.3d 554, 561 (2d Cir. 2014)).  Therefore, in light of Judge Hurley's ruling, the Court sees the ripeness issue as a prudential rather than a pure jurisdictional rule, and thus, it is not exempt from the law of the case doctrine.  *See Horne v. Dep't of Agric.*, 569 U.S. 513, 526 (2013) (recognizing that prudential ripeness is "not, strictly speaking, jurisdictional"); *WG Woodmere LLC v. Town of Hempstead*, No. 20-CV-3903, 2022 WL 17359339, at *4 (E.D.N.Y. Dec. 1, 2022) ("However, the Supreme Court has suggested, and the Second Circuit explicitly stated, that the specific ripeness requirements applicable to land use disputes are not jurisdictional.").[6]

Further, the cases cited by Defendant are distinguishable because Defendant already had the exact same opportunity with Judge Hurley in 2020 to challenge ripeness it has now and present the exact evidence it currently attempts to present.  Applying the law of the case doctrine, Defendant has not identified a change in controlling law, new evidence, or a clear error to justify departing from Judge Hurley's well-reasoned and fully analyzed opinion on ripeness.  *See*

---

[6] Even if the ripeness issue was considered a subject matter jurisdiction rule, the Court is not required to exclude the law of the case doctrine to subject matter jurisdiction issues.  *See, e.g.*, *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988) (applying law of the case doctrine to subject matter jurisdiction, stating that courts have "the power to revisit prior decisions of its own or of a coordinate court in any circumstance, although as a rule courts should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was 'clearly erroneous and would work a manifest injustice'" (quoting *Arizona v. California*, 460 U.S. 605, 619 n.8 (1983))); *Chan v. Reno*, 991 F. Supp. 266, 272 (S.D.N.Y. 1998) (applying law of the case doctrine to subject matter jurisdiction); *see also* 18B Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 4478.5 (3d ed. Apr. 2023 update) ("A court may accept its own earlier determination supporting subject-matter jurisdiction or justiciability.").

*Esposito*, 2023 WL 192671, at *2 (outlining the major grounds justifying departure from the law of case). Defendant presents nothing new in its Motion that it could not have presented earlier to Judge Hurley in reaching his exceedingly thorough decision in *Lubavitch II*. *See Vornado Realty Tr. v. Castlton Env't Contractors*, LLC, No. 08-CV-4823, 2013 WL 5719000, at *3 (E.D.N.Y. Oct. 18, 2013) ("When arguing for reconsideration based on new evidence, the moving party 'must demonstrate that the newly discovered evidence was neither in his possession nor available upon the exercise of reasonable diligence at the time the interlocutory decision was rendered.'" (quoting *Rockland Exposition, Inc. v. All. of Auto. Serv. Providers of New Jersey*, 894 F. Supp. 2d 288, 339 (S.D.N.Y. 2012))); *see also Yankton Sioux Tribe v. Podhradsky*, 606 F.3d 994, 1005 (8th Cir. 2010) ("It is not clear that any of the defendants' evidence was truly 'new' in the sense that it could not have reasonably been developed and presented in earlier stages of this litigation."); 18B Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 4478 (3d ed. Apr. 2023 update) ("Evidence that could have been presented earlier commonly is not considered, in keeping with the general rules that discourage slovenly or ill-considered approaches."). As Plaintiffs accurately put it, "[t]he determination of [] ripeness also is not one for serial revisitation, particularly here where . . . the evidence has not changed since the motion to amend in 2020." ECF No. 185 at 3. Therefore, the Court will not now afford Defendant a second opportunity to challenge ripeness.[7]

---

[7] Even if Judge Hurley's opinion was not the law of the case, Defendant still has not shown that Plaintiffs' land-use claims are unripe. A recent Second Circuit decision forecloses Defendant's argument. In *Ateres Bais Yaakov Acad. of Rockland v. Town of Clarkstown*, No. 22-1741-CV, 2023 WL 8494453 (2d Cir. Dec. 8, 2023), the Court of Appeals found that "federal courts have an obligation to adjudicate cases that invoke our jurisdiction, and we do not close our doors to litigants properly seeking federal review simply because their grievances touch on local zoning matters." *Id.* at *5. "So long as a plaintiff has submitted a meaningful application to municipal agencies to address its land-use controversy, and the municipal entity responsible for the relevant zoning laws has had an opportunity to commit to a position 'that by all accounts, it intends to be final,' the parties' dispute is sufficiently final for ripeness purposes." *Id.* (quoting *Vill. Green at Sayville, LLC v. Town of Islip*, 43 F.4th 287, 299 (2d Cir. 2022)). "It is important to bear in mind that 'the finality requirement is relatively modest,' and 'nothing more than *de facto* finality is necessary.'" *Id.* (quoting *Pakdel v. City & Cnty. of San Francisco*, 141 S. Ct. 2226, 2230 (2021)). Thus, the Court of Appeals found the plaintiff's claim ripe even though the zoning board did not issue a final

### B.    Facial Challenges to the POW Law: Counts 1-8 and 14-15

Counts 1-8 and 14-15 assert a facial challenge to Defendant's POW Law.  *See Lubavitch II*, 2021 WL 4472852, at *12 ("The SAC attacks the POW Law as unconstitutional on its face and alleges injury independent of Defendants' handling of Plaintiffs' land-use application.  To the extent Plaintiffs' Land-Use Claims incorporate this facial challenge, and they all do, they are ripe.") (citations omitted).

Defendant argues two points in its attempt to foreclose Plaintiffs' facial challenges, neither of which are persuasive.  Defendant argues that the POW Law is "a neutral law of general applicability," citing District Judge Pamela K. Chen's opinion in *Roman Cath. Diocese of Rockville Ctr. v. Inc. Vill. of Old Westbury*, 128 F. Supp. 3d 566 (E.D.N.Y. 2015) ("*Roman Catholic Diocese II*"), as controlling because it dealt with the same POW Law.  Def. Mem. at 12-13.  But that decision was issued at the *summary judgment* phase after both parties had the benefit of discovery.  *See Roman Catholic Diocese II*, 128 F. Supp. 3d at 580.  The Court relies instead on Judge Hurley's earlier opinion in that case, *Roman Cath. Diocese of Rockville Ctr. v. Inc. Vill. of Old Westbury*, No. 09-CV-5195, 2012 WL 1392365 (E.D.N.Y. Apr. 23, 2012) ("*Roman Catholic Diocese I*"), because Judge Hurley dealt with a motion to amend under Rule 15 and ruled on the futility of the plaintiffs' amended claims—a standard which is identical to a Rule 12(b)(6) motion to dismiss, presently before the Court in the Village's Motion.  *See id.* at *5.  Therefore, to the extent that Defendant points to Judge Chen's subsequent summary judgment decision as controlling throughout its Motion, the Court declines to do so, and instead, will consider Judge Hurley's earlier opinion as more persuasive *at this stage of the case.*[8]  *Cf.*

decision.  Here, after more than fifteen years of delaying or outright denying Plaintiffs' land-use application, Defendant has essentially issued a *de facto* final decision.  *See Lubavitch II*, 2021 WL 4472852, at *13.

[8] The Court notes that Judge Hurley's opinion on Plaintiffs' motion to amend in this case, *Lubavitch II*, did not rule on whether *Roman Catholic Diocese II* controlled regarding Plaintiffs' facial challenges.  *See Lubavitch II*,

*Taylor v. Sturgell*, 553 U.S. 880, 893 (2008) ("[O]ne is not bound by a judgment *in personam* in a litigation in which he is not designated as a party or to which he has not been made a party by service of process." (quoting *Hansberry v. Lee*, 311 U.S. 32, 40 (1940))).

In seeking to dismiss these claims, Defendant also argues that the POW Law does not discriminate against religious applicants in general or in particular, citing declarations outside of the SAC. Def. Mem. at 12-13. As stated above (*see supra* Part II), because this is premised on allegations contained solely in the Declaration of Fred J. Carillo (and thus outside the SAC), the Court rejects this argument. *See, e.g.*, *Goel v. Bunge, Ltd.*, 820 F.3d 554, 560 (2d Cir. 2016) (vacating adjudication of a motion to dismiss because it relied on an affidavit extraneous to the complaint); *Friedl v. City of New York*, 210 F.3d 79, 84 (2d Cir. 2000) (same).

As Defendant's arguments are unconvincing, the Court finds that Plaintiffs sufficiently allege that Defendant's POW Law is facially unconstitutional. The Supreme Court has held:

> There are, of course, many ways of demonstrating that the object or purpose of a law is the suppression of religion or religious conduct. To determine the object of a law, we must begin with its text, for the minimum requirement of neutrality is that a law not discriminate on its face. A law lacks facial neutrality if it refers to a religious practice without a secular meaning discernable from the language or context.

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 533 (1993). Where a law or policy is discriminatory on its face, no further showing of discriminatory intent is required. *See Hayden v. Cnty. of Nassau*, 180 F.3d 42, 48 (2d Cir. 1999); *Orthodox Jewish Coal. of Chestnut Ridge v. Vill. of Chestnut Ridge*, 2021 WL 3605041, at *2 (S.D.N.Y. 2021). Indeed, "[b]oth the Supreme Court and this Circuit have recognized that '[a]lthough facial challenges are generally disfavored, they are more readily accepted in the First Amendment context.'" *Picard v. Magliano*, 42 F.4th 89, 101 (2d Cir. 2022) (quoting *Beal v. Stern*, 184 F.3d 117, 125 (2d Cir.

---

2021 WL 4472852, at *19.

1999)).  Here, Plaintiffs have alleged enough at this stage to establish that the POW Law lacks facial neutrality as it expressly refers to a religious practice without a secular meaning discernable from the language or context.  *See* SAC ¶¶ 22, 24, 26, 30, 64, 155-63; *see also Omar Islamic Ctr. Inc. v. City of Meriden*, 633 F. Supp. 3d 600, 624 (D. Conn. 2022) (finding that regulations that permitted secular uses as of right but prohibited places of worship unless they received a special permit were "discriminatory on their face"); *Roman Catholic Diocese I*, 2012 WL 1392365, at *14 (finding that plaintiffs alleged "enough at this stage to sustain its [facial] challenge to the POW Law").

Therefore, to the extent that Counts 1-8 and 14-15 assert facial challenges (*see Lubavitch II*, 2021 WL 4472852, at *12), the Court recommends denying the Motion with respect to Plaintiffs' facial challenges.

### C.      Free Speech and Free Association Claims: Counts 2 and 3

Plaintiffs claim violations under Section 1983 of the right to Free Speech and Free Association under the First Amendment (SAC ¶¶ 346-48, "Count 2") and the right to Freedom of Intimate Association and Freedom of Expressive Association under the First Amendment (*id.* ¶¶ 349-51, "Count 3").  Defendant argues that Count 2 should be dismissed because "simple limitations on the location of a religious institution do not implicate" the First Amendment.  Def. Mem. at 16-17.  Defendant also contends that Count 3 should be dismissed because Plaintiffs do not allege facts demonstrating "direct and substantial interference with associational rights."  *Id.* Plaintiffs argue that the SAC alleges "a series of purposeful, retaliatory and conspiratorial actions designed to suppress a protected right to free speech."  Pl. Mem. at 16 (citations omitted). Evaluating Plaintiffs' claims according to the appropriate legal standards (which are not clearly argued by either party), the Court agrees with Plaintiffs that, at this stage in the litigation, the SAC sufficiently establishes a Free Speech and Freedom of Expressive Association violation.

The Court, however, finds that the SAC does not establish a Freedom of Intimate Association claim and should be dismissed.

Under the First Amendment's Free Speech Clause (U.S. Const. amend. I) and well-established case law, constitutionally protected speech includes certain symbolic speech and expressive conduct. *See Rumsfeld v. F. for Acad. & Instit. Rts., Inc.*, 547 U.S. 47, 66–69 (2006). The scope of protections depends on whether the restriction imposed is content-based or content-neutral. *See Universal City Studios, Inc. v. Corley*, 273 F.3d 429, 450 (2d Cir. 2001) (recognizing two different types of regulations—content-based regulations, which receive strict scrutiny, and content-neutral regulations, which receive intermediate scrutiny); *Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, 915 F. Supp. 2d 574, 623 (S.D.N.Y. 2013), *aff'd sub nom. Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, 945 F.3d 83 (2d Cir. 2019) ("*Tartikov I*") (same). Regulations are content-based if the "claimed reason for the restriction is itself content based." *Tartikov I*, 915 F. Supp. 2d at 623. Content-neutral regulations limit the time, place, or manner of protected expression. *See Costello v. City of Burlington*, 632 F.3d 41, 45 (2d Cir. 2011) (articulating the standard for content-neutral regulations); *Tartikov I*, 915 F. Supp. 2d at 623-24 (same).

Contrary to Defendant's argument, Plaintiffs have sufficiently pled that the POW Law and the Village's actions violated Plaintiffs' right to Free Speech. The SAC sufficiently alleges that the proposed religious development would engage in and foster expressive conduct. *See* SAC ¶¶ 57-58, 72-73, 116-21, 123, 125-29, 139-45, 347; *see also Tartikov I*, 915 F. Supp. 2d at 625 (finding that a rabbinical college would engage in and foster expressive conduct sufficient to support a Free Speech claim at the motion to dismiss stage). To counter this proposition, Defendant argues that the limitations on Plaintiffs' construction of a temple do not implicate the

First Amendment and cites two cases in support of this proposition—*Tenafly Eruv Ass'n v. Borough of Tenafly*, 309 F.3d 144 (3d Cir. 2002) and *Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, 138 F. Supp. 3d 352 (S.D.N.Y. 2015) ("*Tartikov II*").  Both cases are distinguishable and do not support Defendant's argument.

Unlike the case here, *Tenafly* did not involve a religious group assembling for worship or the construction of houses of worship.  Rather, plaintiffs in that case wanted to use *eruvs* (made by attaching thin black strips of plastic on utility poles) to mark the outer boundaries of their home, which would allow them to engage in certain activities on the Sabbath.  *See Tenafly*, 309 F.3d at 152.  The court rejected that Free Speech claim because the *eruv* "simply demarcates the space within which certain activities . . . are allowed" and that it did not communicate a message because it served a "purely functional purpose."  *Id.* at 162, 164.  Here, on the other hand, the SAC sufficiently alleges that Plaintiffs' proposed development in Old Westbury is not "purely functional" in that it would foster the expression of Orthodox Jewish beliefs and ideas among potential congregants.  *See* SAC ¶¶ 57-58, 72-73, 116-21, 123, 125-29, 139-45, 347.

Furthermore, *Tartikov II* (also cited by Defendant) was decided at the *summary judgment* stage, which uses a different standard governing the pending motion to dismiss here.  *See Tartikov II*, 138 F. Supp. 3d at 370 (ruling on motion for summary judgment).  Instead, the Court relies on an opinion decided earlier in that same case on a Rule 12(b)(6) motion as more authoritative and persuasive.  *See Tartikov I*, 915 F. Supp. 2d at 581 (ruling on motion to dismiss)

Additionally, because Plaintiffs have sufficiently alleged that Defendant was motivated by a discriminatory animus because of Plaintiffs' religion (*see Lubavitch II*, 2021 WL 4472852, at *1 (Judge Hurley noting "allegations of open hostility" and "malicious intent and bad faith in

negotiations")), Plaintiffs have sufficiently alleged that the POW Law restricts protected expressive conduct because of its message.  *See* SAC ¶¶ 49, 81-82, 173-75, 182-216, 347; *see also Tartikov I*, 915 F. Supp. 2d at 625 (finding that plaintiffs pled enough facts to establish that "the ordinances restrict[ed] protected expressive conduct because of its message"); *Chabad Lubavitch v. Borough of Litchfield*, 796 F. Supp. 2d 333, 345 (D. Conn. 2011), *aff'd in part, vacated in part, remanded sub nom. Chabad Lubavitch of Litchfield Cnty., Inc. v. Litchfield Historic Dist. Comm'n*, 768 F.3d 183 (2d Cir. 2014) (denying motion to dismiss Free Speech claim where defendants "acted with the *intent* to interfere with the Chabad's religious speech" in trying to prevent the religious plaintiffs from developing and using their property as a place of worship) (emphasis in original).  The undersigned therefore concludes that Count 2 should withstand dismissal.

Regarding Count 3, under the First Amendment's Freedom of Association Clause and well-established caselaw, there are two types of "freedom of association" that merit constitutional protection: (1) the choice to enter into and maintain intimate human relationships ("intimate association"), and (2) association for the purposes of engaging in activities protected by the First Amendment ("expressive association").[9]  *E.g.*, *Sanitation & Recycling Indus., Inc. v. City of New York*, 107 F.3d 985, 995–96 (2d Cir. 1997) (recognizing "two distinct types of association, 'intimate association' and 'expressive association'"); *Tartikov I*, 915 F. Supp. 2d at 627 (same).  Here, given that the Court already found that Plaintiffs sufficiently allege that the POW Law and Defendant's actions implicate a Free Speech right, the Court similarly finds that Plaintiffs have adequately pled a Freedom of Expressive Association claim.  SAC ¶ 350.  Plaintiffs have sufficiently alleged that the POW Law interferes with Plaintiffs associating in

---

[9] The parties do not distinguish between the two freedom of association claims in their briefs, but, because the SAC alleges both, the Court does so here.  SAC ¶ 350.

their religious beliefs and studies. *See, e.g.*, *Tartikov I*, 915 F. Supp. 2d at 627 (finding that plaintiffs alleged "that the ordinances bar[red] Plaintiffs from associating in their rabbinical studies"); *Chabad Lubavitch v. Borough of Litchfield*, 796 F. Supp. 2d 333, 345 (D. Conn. 2011), *aff'd in part, vacated in part, remanded sub nom. Chabad Lubavitch of Litchfield Cnty., Inc. v. Litchfield Historic Dist. Comm'n*, 768 F.3d 183 (2d Cir. 2014) (denying motion to dismiss Free Association claim because defendants had "*intent* to interfere" with the Chabad's "expressive association") (emphasis in original); *see also Tabbaa v. Chertoff*, 509 F.3d 89, 101 (2d Cir. 2007) ("[I]mplicit in the right to engage in activities protected by the First Amendment [is] a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, *religious*, and cultural ends." (quoting *Roberts v. U.S. Jaycees*, 468 U.S. 609, 622, (1984))) (emphasis added). Regarding Plaintiffs' "intimate association" claim, however, the SAC contains no allegations (or at best wholly conclusory allegations) that Defendant interfered with Plaintiffs' right to maintain intimate human or familial relationships. *See Tartikov I*, 915 F. Supp. 2d at 627 (citing "bare-bones, conclusory allegations" in dismissing plaintiffs' intimate association claim).[10]

Therefore, for the reasons stated above, the Court recommends denial of the Motion with respect to Counts 2 and 3, except that the portion of Count 3 that alleges that Defendant deprived Plaintiffs of their right to freedom of intimate association should be dismissed.

### D.    Equal Protection Claim: Count 4

Plaintiffs assert a Section 1983 claim for violation of the Equal Protection Clause of the

---

[10] Defendant's reliance on *Fighting Finest, Inc. v. Bratton*, 95 F.3d 224 (2d Cir. 1996) is misplaced. In *Fighting Finest*, the Court held that the defendant did not prevent or burden in any significant manner the plaintiff's ability to associate by simply prohibiting the plaintiff from posting its notices on police premises. *See id.* at 228. While it is true that a claim that government action that only makes association more difficult is insufficient, Plaintiffs have alleged significant burdens in their ability to associate, more than the inconvenient burdens alleged in *Fighting Finest*. *See* SAC ¶¶ 63-64, 81-82 162, 173-75, 196.

Fourteenth Amendment (*id.* ¶¶ 352-54, "Count 4"). Defendant's main argument for dismissal is that Plaintiffs failed to sufficiently allege that they were treated differently compared with others and that Plaintiffs did not identify any "similarly situated" property owners, as required to establish an equal protection claim. Def. Mem. at 14. Plaintiffs, however, argue that they only need evidence of discriminatory intent, and, in any event, they have identified sufficient "similarly situated" property owners. Pl. Mem. at 12-13. *Id.* Both parties, however, only address the selective enforcement basis to establish an equal protection claim. Def. Mem. at 14; Pl. Mem. at 12. Neither party addresses the other method to establish an equal protection claim. *See Pyke v. Cuomo*, 567 F.3d 74, 76 (2d Cir. 2009) (stating "several ways" to establish an equal protection claim). Although neither party addresses this second basis, the Court will do so because Plaintiffs sufficiently allege enough in the SAC to establish an equal protection claim under *Pyke*.

"The Equal Protection Clause . . . is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). There are two ways to establish an equal protection claim. The first involves challenging a law that is alleged to have treated a certain protected group differently than another group—for purposes of this opinion, a so-called "*Pyke*" claim. *See Pyke*, 567 F.3d at 76. To establish a *Pyke* claim, a plaintiff must allege that there is: (i) "a law that expressly classifies on the basis of [religion]," (ii) "a facially neutral law or policy that has been applied in an unlawfully discriminatory manner," *or* (iii) "a facially neutral policy that has an adverse effect and that was motivated by discriminatory animus." *Id.*; *accord Cent. UTA of Monsey v. Vill. of Airmont*, No. 18-CV-11103, 2020 WL 377706, at *17 (S.D.N.Y. Jan. 23, 2020).

Another way to bring an Equal Protection claim is to challenge the "selective

enforcement" of a law against a plaintiff.  *See Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000) (distinguishing between a challenge to a law and a challenge to "the selective enforcement of the law against" plaintiff); *LeClair v. Saunders*, 627 F.2d 606, 608 (2d Cir. 1980) (recognizing an equal protection claim of "selective enforcement").  To establish a selective enforcement claim, a plaintiff must allege that: "(1) the [plaintiff], compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person."  *Diesel*, 232 F.3d at 103 (quoting *LeClair*, 627 F.2d at 609-10).

      1.    *Pyke* Claim

Although neither party explicitly addresses this type of claim in their papers, the SAC contains sufficient allegations to establish a *Pyke* claim at this stage.[11]  As stated above (*see supra* Part III.B), Plaintiffs have sufficiently alleged that the POW Law is a "law that expressly classifies on the basis of" religion.  *See* SAC ¶¶ 22, 24, 26, 30, 64, 155-63; *see also Pyke*, 567 F.3d at 76 (recognizing that a plaintiff can establish an equal protection violation by "pointing to a law that expressly classifies on the basis of race"); *Omar Islamic Ctr. Inc. v. City of Meriden*, 633 F. Supp. 3d 600, 624 (D. Conn. 2022) (finding that a facially discriminatory land regulation violated plaintiff's right to equal protection); *Roman Catholic Diocese I*, 2012 WL 1392365, at *14 (finding that plaintiffs alleged "enough at this stage to sustain its [facial] challenge to the POW Law").  Therefore, to the extent that Count 4 challenges the POW Law on its face (*see Lubavitch II*, 2021 WL 4472852, at *12), Plaintiffs can maintain an equal protection claim.

---

[11] Plaintiffs allude to their facial challenge to the POW Law in their Opposition brief.  Pl. Mem. at 4 n.3.  Defendant addresses the facial challenge to the POW Law in its briefs as well.  Def. Mem. at 11-13.

2.    <u>Selective Enforcement Claim</u>

Plaintiffs' selective enforcement claim, however, fails because the SAC does not contain allegations sufficient to identify similarly situated property owners.  Courts in this Circuit have not developed a universal standard to define "similarly situated."  *See, e.g.*, *Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 815 F. Supp. 2d 679, 696 (S.D.N.Y. 2011) ("Similarly situated does not mean identical, but rather a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases, to the extent that an objectively identifiable basis for comparability exists." (quoting *Walker v. City of New York*, No. 05-CV-1283, 2010 WL 5186779, at *7 (E.D.N.Y. Dec. 15, 2010))); *Abel v. Morabito*, No. 04-CV-7284, 2009 WL 321007, at *5 (S.D.N.Y. Feb. 10, 2009) ("Plaintiff must identify comparators whom a 'prudent person would think . . . [were] roughly equivalent.'" (quoting *Est. of Morris ex rel. Morris v. Dapolito,* 297 F. Supp. 2d 680, 686 (S.D.N.Y. 2004))); *see also Roman Catholic Diocese I*, 2012 WL 1392365, at *12 (discussing the different standards employed in the Circuit).

The Court, however, need not address which standard applies because, under even the least demanding standard, Plaintiffs fail to sufficiently articulate adequate comparators. Plaintiffs do not sufficiently identify any specific secular comparators when alleging that the Village zoning code affirmatively allows development "as of right" compared to the POW Law. SAC ¶ 147 (generic listing of secular institutions).  Plaintiffs do not cite to any relevant parts of the Village zoning code, nor do they go into any detail or explanation of how a prudent person would think private county clubs or a horse training facility, for example, would be roughly equivalent to the proposed religious development here.  *See Roman Catholic Diocese I*, 2012 WL 1392365, at *12 (finding that plaintiff "utterly failed to articulate how the [religious cemetery] could be viewed by a reasonably prudent person as being roughly equivalent to the golf courses, polo grounds, and public gardens located within the Village").  Further, Plaintiffs identify "on

information and belief" that certain secular institutions were treated differently with respect to the SEQRA designations, but provide no specific allegations as to why or how a prudent person could view those secular institutions as similarly situated to Plaintiffs' proposed temple and Mikvah or how these secular institutions were specifically treated during the SEQRA process.[12] SAC ¶¶ 32-33; 170 (secular institutions include (1) a commercial horse farm, (2) a residential development, (3) a convenience store, and (4) a parking lot). *See Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 60 (2d Cir. 2010) (finding that properties that differed in land use and in scale were not similar "let alone so similar that no rational person could see them as different"). The thin allegation "on information and belief" that the Village had not made a positive SEQRA designation for any secular land applicants is not enough. SAC ¶ 32; *see Mosdos Chofetz Chaim, Inc. v. Vill. Of Wesley Hills*, 701 F. Supp. 2d 568, 604 (S.D.N.Y. 2010) (finding that "bare" allegations that "neither explicitly allege that these other developments were similarly situated to their proposed development, nor allege facts suggesting that they were similarly situated" were not enough to establish a selective enforcement claim).

Therefore, for the reasons stated above, the Court recommends granting the Motion only with respect to Plaintiffs' selective enforcement claim under Count 4. SAC ¶ 353.

### E.    RLUIPA Claims: Counts 6, 7, 8 and 13

Plaintiffs assert four Causes of Action for violations of RLUIPA, 42 U.S.C. § 2000cc—Count 6 "substantial burden," Count 7 "nondiscrimination," Count 8 "equal terms," and Count 13 related to the Mikvah.[13]

---

[12] Notably, Plaintiffs do not even attempt to argue how these secular institutions are "similarly situated" in their Opposition brief. They only state that the secular uses were "at a scale equal or greater than proposed religious uses." Pl. Mem. at 12-13. Instead, their argument incorrectly relies on the idea that courts should not analyze comparators so rigidly. *Id.* at 12, 20.

[13] Although Defendant did not explicitly seek to move to dismiss Count 13 under Rule 12(b)(6) for failure to state a claim, Defendant did address Count 13 in its Initial Brief ("Count 13 . . . should also be dismissed on

1.    <u>Substantial Burden Claim: Count 6</u>

Plaintiffs claim a violation of RLUIPA's substantial burden clause, 42 U.S.C. § 2000cc(2)(a).  SAC ¶¶ 362-69 ("Count 6").  Defendant argues that dismissal of Count 6 is required because (1) Plaintiffs failed to allege any coercive government action, considering that the Village Board never outright denied Plaintiffs' application and "merely sought to ensure compliance" with the review process, and (2) Plaintiffs did not sufficiently allege that the POW Law was designed to target any specific religion or to restrict religious exercise.  Def. Mem. at 15-16.  Plaintiffs counter that the standard for establishing a substantial burden claim is not so strict, and thus, the SAC sufficiently alleges that Defendant imposed substantial burdens "through a land use assessment process that permits it to make individualized assessments of the proposed religious use."  Pl. Mem. at 15.  The Court agrees with Plaintiffs.

RLUIPA's substantial burden provision prohibits the government from "impos[ing] or implement[ing] a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person" or religious institution "unless the government demonstrates that imposition of the burden" is "in furtherance of a compelling governmental interest" and "is the least restrictive means of furthering that compelling governmental interest."  42 U.S.C. § 2000cc(a)(1).  "In order to establish a prima facie violation of RLUIPA, a Plaintiff must present evidence that the land use regulation at issue as implemented: (1) imposes a substantial burden, (2) on the 'religious exercise,' (3) of a person, institution, or assembly."  *Cathedral Church of Intercessor v. Inc. Vill. of Malverne*, No. 02-CV-2989, 2006 WL 572855, at *8 (E.D.N.Y. Mar. 6, 2006).  "At the pleadings stage, a plaintiff need only allege a prima facie

---

jurisdictional grounds") and in its Reply Brief ("Count 13 fails because it violates FRCP 8(a)(2)").  Def. Mem. at 1; Def. Rep. at 8.  Therefore, the Court does address Count 13 and dismisses it for the reasons stated below.  *See infra* Part III.E.4.

violation; an analysis of whether the government has shown a compelling government interest or the use of least restrictive means is more appropriately addressed in connection with summary judgment." *Cent. UTA of Monsey v. Vill. of Airmont*, No. 18-CV-11103, 2020 WL 377706, at *16 (S.D.N.Y. Jan. 23, 2020) (quoting *Roman Catholic Diocese I*, 2012 WL 1392365, at *7).

Here, Plaintiffs sufficiently allege a *prima facie* substantial burden violation. First, Plaintiffs clearly meet the second and third prongs (points which Defendant does not contest). Plaintiffs are an institution (Lubavitch) and a person (Rabbi Konikov) and the proposed use of the property is for religious exercise. *See* SAC ¶¶ 78, 139-43; *see also Cathedral Church of Intercessor*, 2006 WL 572855, at *8 (satisfying second and third prongs). As for the first prong, Plaintiffs sufficiently allege that the POW Law imposes a substantial burden on its religious exercise within the meaning of RLUIPA. Plaintiffs claim that the POW Law reduces the space available to practice their religion. *See* SAC ¶¶ 165, 171, 243. Plaintiffs also contend that the POW Law imposed burdensome boundary setback or non-use requirements. *Id.* ¶¶ 63-64, 162, 196. Further, Plaintiffs allege that they have had to spend "excessive resources" on studies and assessments and "search[] for decades" to identify alternative locations within the Village, only to find no suitable alternative. *Id.* ¶¶ 34, 144-45, 234. At this stage in litigation, courts in this Circuit have found in similar circumstances substantial burdens sufficient to state a *prima facie* violation of RLUIPA's substantial burden provision. *See, e.g.*, *Cent. UTA of Monsey*, 2020 WL 377706, at *16 (finding a substantial burden where conditions resulted in a monetary penalty and reduced the number of students that could enroll in the religious school); *Tartikov I*, 915 F. Supp. 2d at 632 (finding a substantial burden where ordinances restricted where a religious college could be built, and the size and the number of religious structures that could make up the college); *Roman Catholic Diocese I*, 2012 WL 1392365, at *8 (finding a substantial burden

where conditions imposed by the same POW Law "would significantly restrict the Diocese's use of their Property for religious burial purposes"); *Chabad Lubavitch v. Borough of Litchfield*, 796 F. Supp. 2d 333, 343 (D. Conn. 2011), *aff'd in part, vacated in part, remanded sub nom. Chabad Lubavitch of Litchfield Cnty., Inc. v. Litchfield Historic Dist. Comm'n*, 768 F.3d 183 (2d Cir. 2014) (finding a substantial burden where conditions imposed "would not permit an addition any larger than the size of the current building"); *Cathedral Church of Intercessor v. Inc. Vill. of Malverne*, No. 02-CV-2989, 2006 WL 572855, at *8 (E.D.N.Y. Mar. 6, 2006) (finding a substantial burden where conditions imposed a "lack of space to conduct faith-based activities"). Further, contrary to Defendant's argument that the Village Board never outright denied Plaintiffs' application, it is well-settled "that a complete denial of the Plaintiffs' proposal is not necessary for the Court to find that the government regulation has imposed a substantial burden on religious exercise." *Id.* (citing *Westchester Day Sch. v. Vill. of Mamaroneck*, 379 F. Supp. 2d 550, 556–57 (S.D.N.Y. 2005)); *see also Roman Catholic Diocese I*, 2012 WL 1392365, at *8 n.9 (rejecting the argument that plaintiff could not allege substantial burden claim because the Board did not deny plaintiff's application).

Therefore, for the reasons stated above, the Court recommends denying the Motion with respect to Count 6.[14]

---

[14] The Court already determined above (*see supra* Part III n.5) that Defendant did not move to dismiss Plaintiffs' Free Exercise claim ("Count 1") under Rule 12(b)(6) for failure to state a claim. Even if it did so move (which it did not), in the land use context, courts analyze a Free Exercise claim under the same framework as a RLUIPA substantial burden claim. *See, e.g.*, *Westchester Day Sch. v. Vill. of Mamaroneck*, 504 F.3d 338, 348 (2d Cir. 2007); *Roman Catholic Diocese I*, 2012 WL 1392365, at *9. Thus, because Count 6 survives, Count 1 survives as well. The Court notes that the Second Circuit's recent decision, *Kravitz v. Purcell*, No. 22-764, 2023 WL 8177114, at *7 (2d Cir. Nov. 27, 2023), does not apply here. There, the Court of Appeals held that a prisoner claiming a violation of the right to free exercise of religion under Section 1983 does not need to show a substantial burden. The dispute currently before the Court, however, is in the land use context. And, even if *Kravitz* did apply, this Court would be persuaded to apply the lesser standard set forth by *Kravitz*, where a plaintiff is not required to "show that the governmental burden on religious beliefs was 'substantial,'" but rather, "that a government entity has burdened [plaintiff's] sincere religious practice pursuant to a policy that is not 'neutral' or generally 'applicable.'" *Id.* at *11 (quoting *Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407, 2411 (2022). Here, Plaintiffs clear that hurdle.

2.      Nondiscrimination Claim: Count 7

Plaintiffs claim a violation of RLUIPA's nondiscrimination clause, 42 U.S.C.

§ 2000cc(2)(b)(2).  SAC ¶¶ 370-74 ("Count 7").  Defendant argues that RLUIPA

nondiscrimination claims are analyzed under the same framework as equal terms claims, and

thus, should require Plaintiffs to allege sufficient comparators.  Def. Mem. at 17.  Plaintiffs argue

that evidence of comparators is not necessary to establish a nondiscrimination claim.  Pl. Mem.

at 18-19.  The Court agrees with Plaintiffs.

RLUIPA's nondiscrimination provision states: "[n]o government shall impose or

implement a land use regulation that discriminates against any assembly or institution on the

basis of religion or religious denomination."  42 U.S.C. § 2000cc(b)(2).  Some courts in this

Circuit have treated RLUIPA nondiscrimination and equal terms claims alike.  *See, e.g.*, *Cent.*

*UTA of Monsey v. Vill. of Airmont*, No. 18-CV-11103, 2020 WL 377706, at *17 (S.D.N.Y. Jan.

23, 2020) (analyzing nondiscrimination and equal terms claims together); *Tartikov I*, 915 F.

Supp. 2d at 637 ("[B]ased on the language of the two provisions and the caselaw applying them,

the elements of a Nondiscrimination claim differ little, if at all, from an Equal Terms claim.").

This Court, however, will follow instead the Second Circuit's decision in *Chabad Lubavitch of*

*Litchfield Cnty., Inc. v. Litchfield Historic Dist. Comm'n*, 768 F.3d 183 (2d Cir. 2014), which

held that "the plain text of the [nondiscrimination] provision makes clear that, unlike the

substantial burden and equal terms provisions, evidence of discriminatory *intent* is required to

establish a claim."  *Id.* at 198 (emphasis in original); s*ee, e.g.*, *Congregation Rabbinical Coll. of*

*Tartikov, Inc. v. Vill. of Pomona*, 280 F. Supp. 3d 426, 488 (S.D.N.Y. 2017), *aff'd in relevant*

*part*, 945 F.3d 83 (2d Cir. 2019) (following *Chabad* and requiring the same proof for a RLUIPA

nondiscrimination claim as an equal protection claim); *Bernstein v. Vill. of Wesley Hills*, 95 F.

Supp. 3d 547, 591 n.55 (S.D.N.Y. 2015), *aff'd*, 644 F. App'x 42 (2d Cir. 2016) (citing *Chabad* in

evaluating a RLUIPA nondiscrimination claim). Thus, the Court of Appeals held that while evidence of comparators may be "germane," it is "not necessary to establish a nondiscrimination claim." *Chabad Lubavitch of Litchfield Cnty., Inc.*, 768 F.3d at 199. Instead, the Second Circuit used an analysis similar to how it addresses an equal protection claim under *Pyke*. *See id.* (recognizing that an equal protection claim can be proven by either "(1) a facially discriminatory law; (2) a facially neutral statute that was adopted with a discriminatory intent and applied with a discriminatory effect (i.e., a 'gerrymandered' law); [or] (3) a facially neutral law that is enforced in a discriminatory manner"); *see also Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, 945 F.3d 83, 110 n.211 (2d Cir. 2019) ("RLUIPA's nondiscrimination provision codifies the equal protection guarantees of the Fourteenth Amendment.").

The SAC sufficiently alleges a RLUIPA nondiscrimination claim because, as analyzed above (*see supra* Part III.D.1), the POW Law is a "law that expressly classifies on the basis of" religion. *See* SAC ¶¶ 22, 24, 26, 30, 64, 155-63; *see also Pyke*, 567 F.3d at 76 (recognizing that a plaintiff can establish an equal protection violation by "pointing to a law that expressly classifies on the basis of race"). Thus, the Court need not go into any further analysis at this stage whether there was discriminatory intent, because the SAC sufficiently alleges that the POW Law was facially discriminatory.

Therefore, for the reasons stated above, the Court recommends denying the Motion with respect to Count 7.

3.    Equal Terms Claim: Count 8

Plaintiffs claim a violation of RLUIPA's equal terms clause, 42 U.S.C. § 2000cc(2)(b)(1). SAC ¶¶ 375-78 ("Count 8"). The parties again disagree about whether the SAC alleges sufficient comparators. For the reasons already stated above (*see supra* Part III.D.2), the Court agrees with Defendant that the SAC does not allege sufficient comparators.

RLUIPA's equal terms provision states: "[n]o government shall impose a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution." 42 U.S.C. § 2000cc(b)(1). When determining the sufficiency of a plaintiff's equal terms claim, the "threshold area of inquiry" is whether the complaint "identifies a sufficiently comparable non-religious institution or assembly." *Roman Catholic Diocese I*, 2012 WL 1392365, at *10 (finding that plaintiff did not identify sufficiently comparable secular institution in evaluating an equal terms claim); *see also Chabad Lubavitch of Litchfield Cnty., Inc.*, 768 F.3d at 197 (requiring a sufficient comparator to establish *prima facie* violation of RLUIPA's equal terms provision). Because the Court, in its analysis above of Plaintiffs' equal protection "selective enforcement" claim (*see supra* Part III.D.2), already determined that the SAC does not identify sufficient non-religious comparators, Plaintiffs cannot maintain this RLUIPA claim.

Therefore, for the reasons stated above, the Court recommends dismissal of Count 8.

### 4.    Retaliatory Fraudulent Inducement and Related Claims: Count 13

Plaintiffs assert claims related to Defendant's denial of Plaintiffs' use of its Mikvah. SAC ¶¶ 424-36 ("Count 13"). Among the claims comingled in Count 13 are violations of Plaintiffs' right to Free Exercise, violations under RLUIPA, Section 1983 retaliation, and fraudulent inducement. Defendant argues that Count 13 should be dismissed because it violates Fed. R. Civ. P. Rule 8(a)(2). Def. Rep. at 8-9. The Court agrees with Defendant that Count 13 lumps together violations of multiple statutes and constitutional provisions for conduct that occurred between 2012 and 2020, thus making it impossible to answer and analyze. *See Daalling v. Daalling*, No. 23-CV-5426, 2023 WL 5718556, at *3 (E.D.N.Y. Sept. 5, 2023) (finding that dismissal appropriate where the complaint was "so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised" (quoting *Kittay v.*

*Kornstein*, 230 F.3d 531, 541 (2d Cir. 2000))).  Additionally, during the previous first partial Motion to Dismiss before this Court, Plaintiffs previously failed to respond to the other defendants' Rule 8(a)(2) argument regarding Count 13.  *See Lubavitch III*, 2023 WL 6521621, at *20.  As a result, the Court deemed Count 13 abandoned.  *See id.* ("Plaintiffs do not respond to this argument in their opposition. . . . As such, Plaintiffs have abandoned their Thirteenth COA."); *see also Conforti v. Sunbelt Rentals, Inc.*, 201 F. Supp. 3d 278, 292-93 (E.D.N.Y. 2016) (deeming claims abandoned given failure to oppose dismissal arguments).  The Court incorporates that earlier holding in *Lubavitch III*, and thus deems Count 13 against the Village Defendant similarly abandoned.

Therefore, for the reasons stated above, the Court recommends dismissal of Count 13.

### F.    Retaliation Claims: Count 9

Plaintiffs assert several claims of retaliation under Section 1983 ("Count 9"), including that Defendant retaliated against Plaintiffs for (1) pursuing a judicial remedy (SAC ¶ 381), (2) pursuing its Constitutional rights (*id.* ¶¶ 380, 382), (3) its insistence on their entitlement to construct and use the Mikvah (*id.* ¶ 384), and (4) conduct related to police misconduct (*id.* ¶¶ 385-86).  Defendant argues that Plaintiffs fail to identify any harm to Plaintiffs' constitutional rights and that, for the alleged police misconduct, they provide no causal connection between a protected activity and any reprisal.  Def. Mem. at 18.  Plaintiffs argue that the actions of Defendant are "intertwine[d]" with Plaintiffs' pursuit of its constitutional and statutory rights.  Pl. Mem. at 21.  The Court agrees in part with Defendant and recommends that three of these four claims should be dismissed.

To establish a *prima facie* case of retaliation under Section 1983, a plaintiff must show that "(1) he has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by his exercise of that right; and (3) defendants' actions

effectively chilled the exercise of his First Amendment right." *Kuck v. Danaher*, 600 F.3d 159, 168 (2d Cir. 2010) (quoting *Curley v. Vill. of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001). "To survive a motion to dismiss, such claims must be 'supported by specific and detailed factual allegations,' not stated in 'wholly conclusory terms.'" *E.g.*, *Friedl v. City of New York*, 210 F.3d 79, 85–86 (2d Cir. 2000) (quoting *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983))); *Thomas v. New York City Dep't of Educ.*, No. 09-CV-5167, 2019 WL 13180922, at *11 (E.D.N.Y. Feb. 22, 2019) (same). A key part of the claim turns on whether there was a causal connection between the protected activity and the adverse action. *See Hamlett v. Everly*, No. 21-CV-6663, 2023 WL 2586230, at *3 (S.D.N.Y. Mar. 21, 2023) (requiring a plaintiff to show "that an adverse action relates to protected First Amendment activity"); *Tomlins v. Vill. of Wappinger Falls Zoning Bd. of Appeals*, 812 F. Supp. 2d 357, 373 (S.D.N.Y. 2011) (requiring a plaintiff to show that "defendants' conduct was motivated by or substantially caused by [her] exercise of free speech." (quoting *Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 194 (2d Cir. 1994))). To establish a causal connection sufficient to survive a motion to dismiss, the allegations must be "sufficient to support the inference that [the protected activity] played a substantial part in the adverse action." *Kotler v. Boley*, No. 21-1630, 2022 WL 4589678, at *2 (2d Cir. Sept. 30, 2022) (quoting *Davis v. Goord*, 320 F.3d 346, 354 (2d Cir. 2003)). "A causal connection is often shown circumstantially, through allegations that the retaliation occurred in 'close temporal proximity' to the protected activity." *Norton v. Town of Brookhaven*, 33 F. Supp. 3d 215, 235 (E.D.N.Y.), *on reconsideration*, 47 F. Supp. 3d 152 (E.D.N.Y. 2014) (quoting *Kempkes v. Downey*, No. 07-CV-1298, 2008 WL 852765, at *3 (S.D.N.Y. Mar. 31, 2008)).

The Court does not find a *prima facie* case for three of the four retaliation claims here because Plaintiffs have not sufficiently alleged that Defendant's actions were motivated or

substantially caused by Plaintiffs' exercise of a protected activity.  For example, regarding Plaintiffs' claim that they were retaliated against for filing this lawsuit (SAC ¶ 381), there is simply no substantive or detailed allegation contained in the SAC that causally connects any alleged motivation of Defendant to deny Plaintiffs' land use application *because* they initiated a lawsuit.  To be sure, Plaintiffs do have a protected right to sue the Village (*see MacPherson v. Town of Southampton*, 738 F. Supp. 2d 353, 369 (E.D.N.Y. 2010)), however Plaintiffs filed this lawsuit in 2008, while the SAC alleges that Defendant had denied Plaintiffs' application multiple times prior to 2008.  SAC ¶¶ 60, 68; *see Raniola v. Bratton*, 243 F.3d 610, 624 (2d Cir. 2001) (finding that while "plaintiff's burden at the beginning of the case is a light one" it still requires that "the protected activity precede[ ] the adverse action in order to satisfy the causation requirement").  While there are allegations of Defendant's conduct after 2008 relevant to Plaintiffs' application, the SAC only contains conclusory allegations demonstrating that that conduct was motivated or substantially caused by Plaintiffs' lawsuit.  SAC ¶ 381; *see Thomas v. New York City Dep't of Educ.*, No. 09-CV-5167, 2019 WL 13180922, at *11 (E.D.N.Y. Feb. 22, 2019) (dismissing retaliatory claim where the plaintiff did not plausibly allege causation between the protected activity and the adverse conduct).  Further, Plaintiffs' retaliation claims related to police misconduct (SAC ¶¶ 385-86), fail for the additional reason that Plaintiffs do not sufficiently allege that the Village could be held liable for the actions of its police officers (*see infra* Part III.G).

Plaintiffs, however, have established a *prima facie* violation in that Defendant's conduct "was in direct retaliation for its pursuit . . . of its fundamental Constitutional, civil, and statutory rights" related to their attempts to develop their property for religious use.  SAC ¶ 382.  On the first element, there is no question that Plaintiffs have interests protected by the First

Amendment—its rights to Free Exercise, Free Speech, and Free Association. *See Tartikov I*, 915 F. Supp. 2d at 620, 625, 627 (finding First Amendment free exercise, free speech, and free association interests where plaintiff sought to build a rabbinical college).

On the second causal element regarding motivation and the third element as to the chilling effect, Plaintiffs have sufficiently alleged that Defendant's conduct was "motivated or substantially caused by" Plaintiffs' exercise of its interests and that such conduct "chilled" Plaintiffs' interests. *Tomlins v. Vill. of Wappinger Falls Zoning Bd. of Appeals*, 812 F. Supp. 2d 357, 371 n.17 (S.D.N.Y.2011) (finding that the defendant's actions chilled the plaintiff's exercise of her First Amendment rights by alleging "retaliatory denial of building permits" and "a denial of an unconditional variance"). For example, Plaintiffs allege that the Village initiated an action, in 1994, against Rabbi Konikov seeking to enjoin him from inviting guests over to his home for prayer. SAC ¶¶ 81-82, 128, 174. Subsequently, Plaintiffs then tried to apply and build a place of worship on its property only to have the Village summarily reject it and impose a moratorium between 1999 and 2001 "which impeded any progress on their aspirations." *Id.* ¶¶ 61-62, 186; *Lubavitch II*, 2021 WL 4472852, at *13. The moratorium, as alleged, "was intended to be restrictive in its elements applicable to religious land use to discourage or dissuade religious land use applicants." SAC ¶¶ 65, 150-52; *Lubavitch II*, 2021 WL 4472852, at *13. And, throughout the process, Plaintiffs faced "obstruction" in that they "were asked to repeat studies completed in the past" and were sent "back to the drawing board on several occasions." *See* SAC ¶¶ 193-208, 303-04; *Lubavitch II*, 2021 WL 4472852, at *13-14 (summarizing Defendant's conduct in this case).

Judge Hurley previously addressed Defendant's alleged retaliatory conduct, noting that "[t]he land-use procedures Plaintiffs have endured are not just merely frustrating but unfair and

unreasonable." *Id.* at *13.  Judge Hurley also observed that "Defendants' allegedly unfair and repetitive procedures inflicted a 'death by a thousand cuts' which motivates the Court 'to consider the entirety of the government entity's conduct, not just a slice of it.'"  *Id.* at *15 (quoting *Sherman v. Town of Chester*, 752 F.3d 554, 566 (2d Cir. 2014)).  Thus, all of Defendant's conduct taken together establishes a *prima facie* violation of retaliation.  *See Roman Catholic Diocese I*, 2012 WL 1392365, at *15 (finding *prima facie* retaliation where plaintiffs alleged defendants "applied the SEQRA process against them unfairly and adopted a Resolution with arbitrary and substantially burdensome conditions"); *Tomlins v. Vill. of Wappinger Falls Zoning Bd. of Appeals*, 812 F. Supp. 2d 357, 375-76 (S.D.N.Y. 2011) (sustaining First Amendment retaliation claim because plaintiff alleged retaliatory denial of building permits and an unconditional variance).

Therefore, for the reasons stated above, the Court recommends dismissal of most of the retaliation claims in Count 9 (SAC ¶¶ 381, 383-87), with the exception of Plaintiffs' claim that Defendant's conduct was "in direct retaliation for its pursuit" of its Constitutional rights relating to its attempt to use its property for religious use.  *Id.* ¶¶ 380, 382.  This claim should survive.

### G.    Fourth and Fifth Amendment Claims: Counts 10, 11 and 12

Plaintiffs assert three separate causes of action under Section 1983 of alleged police misconduct in violation of the Fourth Amendment's right to be secure from unwarranted or unreasonable search and seizure and of the Fifth Amendment's right to freely travel.  *Id.* ¶¶ 388-423 (Counts 10, 11, and 12, together, the "Police Misconduct Claims").  Defendant's primary argument to dismiss the Police Misconduct Claims is that Plaintiffs failed to plausibly allege that there was any Village policy such that the Village could be held liable for the actions of its police officers, based on *respondeat superior*.  Def. Mem. at 20.  Plaintiffs counter that there was an official policy in the Village and, in the alternative, policymakers within the Village explicitly or

implicitly knew and ratified the alleged police misconduct against Plaintiffs.  Pl. Mem. at 23-24. The Court agrees with Defendant.

Municipalities can be sued under Section 1983 where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers."  *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978).  "Moreover, although the touchstone of the [Section] 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution, local governments, like every other [Section] 1983 'person,' by the very terms of the statute, may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels."  *Id.* at 690-91.

"[T]o hold a city liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right."  *Torraco v. Port Auth. of New York & New Jersey*, 615 F.3d 129, 140 (2d Cir. 2010) (quoting *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007)).  "A plaintiff can establish an official policy or custom by showing any of the following: (1) a formal policy officially endorsed by the municipality; (2) actions or decisions made by municipal officials with decision-making authority; (3) a practice so persistent and widespread that it constitutes a custom of which policymakers must have been aware; or (4) a failure by policymakers to properly train or supervise their subordinates, such that the policymakers exercised 'deliberate indifference' to the rights of the plaintiff and others encountering those subordinates."  *McLennon v. City of New York*, 171 F.

Supp. 3d 69, 94 (E.D.N.Y. 2016).  To survive a motion to dismiss a municipal liability claim, "a plaintiff must allege facts tending to support, at least circumstantially, an inference that such a municipal policy or custom exists."  *Santos v. New York City*, 847 F. Supp. 2d 573, 576 (S.D.N.Y. 2012).

Here, aside from conclusory allegations that the incidents surrounding the Police Misconduct Claims were "in furtherance of a custom or policy of the Village" (SAC ¶¶ 403, 414, 423), Plaintiffs do not allege any specific formal Village policy.  *See McLennon*, 171 F. Supp. 3d at 95 (declining to find a municipal policy from "conclusory allegations that the challenged conduct arose from a 'practice, policy, and/or custom'").  Lacking a formal Village policy, Plaintiffs attempt, yet fail, to allege the existence of a policy or custom under multiple other theories.  Plaintiffs' conclusory allegations that, "on information and belief," the mayor and other Village trustees had "been aware of the actions of Village police officers" (SAC ¶¶ 402, 413, 422) cannot establish municipal liability under a theory that the misconduct was explicitly or implicitly ratified by a Village decisionmaker.  *See Davis v. City of New York*, 228 F. Supp. 2d 327, 341 (S.D.N.Y. 2002) ("[A] plaintiff cannot just prove that the final policymaking authority . . . knew of the adverse action . . . . The plaintiff must also prove that the final policymaking authority knew that the subordinates took that action for unconstitutional reasons."), *aff'd*, 75 F. App'x. 827, 829 (2d Cir. 2003) ("Where . . . liability is premised on the policymaker's approval of a subordinate's unlawful act, it must be shown that the policymaker ratified the 'subordinate's decision and the basis for it.'" (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)).  Further, Plaintiffs' bare allegations of "repeated" police stops in 2017, 2018, and 2019 (SAC ¶¶ 393, 395) and the singular incidents on July 5, 2019 (*id.* ¶ 411) and August 25, 2019 (*id.* ¶ 419) are not enough to establish municipal liability under a theory that the practice was so

persistent that it constituted a policy that decisonmakers must have been aware.  *See, e.g.*, *Giaccio v. City of New York*, 308 F. App'x 470, 472 (2d Cir. 2009) (finding that four incidents were not enough); *McLennon*, 171 F. Supp. 3d at 96 (finding that six incidents were not enough). Lastly, allegations that the Village trustees "receive or received regular monthly reports of police activity in the Village" and "on information and belief possess the authority within the Village to question, obtain additional information, advise . . . or otherwise prevent to stop police activity that is wrongful" (SAC ¶¶ 402) cannot establish municipal liability under an alleged failure to supervise theory, absent any specific allegations that Village decisionmakers acted with deliberate indifference.  *See McLennon*, 171 F. Supp. 3d at 99 ("Where plaintiffs seek to hold a municipality liable under a theory of failure to supervise or discipline . . . they must also show that the municipal policymaker acted with deliberate indifference." (quoting *Pipitone v. City of New York*, 57 F. Supp. 3d 173, 191 (E.D.N.Y. 2014))); *see also Jones v. Town of E. Haven*, 691 F.3d 72, 81 (2d Cir. 2012) (requiring a showing of a policymaker's "deliberate indifference" to establish "that the policymaking official was aware of the employee's unconstitutional actions and consciously chose to ignore them"); *Pipitone*, 57 F. Supp. 3d at 192 ("The means of establishing deliberate indifference will vary given the facts of the case and need not rely on any particular factual showing, but the operative inquiry is whether the facts suggest that the policymaker's inaction was the result of a conscious choice rather than mere negligence." (quoting *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 128 (2d Cir. 2004))).

Therefore, for the reasons stated above, the Court recommends dismissal of Plaintiffs' Police Misconduct Claims—Counts 10, 11 and 12.

### H.    Conspiracy Claims: Counts 14 and 15

Plaintiffs assert claims of Civil Conspiracy in violation of 42 U.S.C. § 1985(3) (SAC ¶¶ 437-44, "Count 14") and 42 U.S.C. § 1986 (SAC ¶¶ 445-51 ("Count 15," together, the

"Conspiracy Claims")).  In addition to arguing that Plaintiffs' Conspiracy Claims are not ripe (which the Court has already rejected above, *see supra* Part III.A), Defendant argues that a "conspiracy requires two persons" and because there are "no other remaining defendants . . . there is no person with whom the Village could conspire." Def. Rep. at 9.  In a last-ditch effort to save the Conspiracy Claims, Plaintiffs bury in a footnote their request for leave of the Court to "replead counts 9-12 in the SAC with respect to the remaining individual Defendants," and thus, include the Conspiracy Claims in this proposed repleading.[15]  Pl. Mem. at 25 n.14.  Plaintiffs cite no authority for such a request.

The Court agrees with Defendant.  Plaintiffs cannot maintain their Section 1985(3) claim because the only defendant remaining in this action—the Village—is a single entity.  *See, e.g.*, *Farbstein v. Hicksville Pub. Libr.*, 254 F. App'x 50, 51 (2d Cir. 2007) (dismissing conspiracy claim against a single entity because a Section 1985(3) claim requires a "common agreement . . . between *two or more persons*," and noting the "legal impossibility" of establishing a conspiracy by reference to actions of employees of a single corporation) (emphasis added); *Coughlin v. New York State Unified Ct. Sys.*, No. 22-CV-4002, 2023 WL 7091904, at *8 (E.D.N.Y. Oct. 26, 2023) (dismissing conspiracy claim against an entity and its employees acting within the scope of their employment); *East v. Roosevelt Union Free Sch. Dist.*, No. 19-CV-3709, 2020 WL 13753159, at *21 (E.D.N.Y. July 31, 2020) (dismissing conspiracy claim against a single municipal entity where the alleged co-conspirators included subordinate entities or individual employees); *cf.* *McMillian v. D.C.*, 466 F. Supp. 2d 219, 223 (D.D.C. 2006) ("[A]n action for civil conspiracy does not encompass acts performed by a single entity.").  Moreover, the SAC contains vague and conclusory allegations that the actors in the alleged conspiracy entered into an agreement,

---

[15] As stated *supra*, Judge Brown dismissed all of Plaintiffs' claims against "all individual defendants."  *See* March 23, 2023 Order.

express or tacit.  *See Davis v. Saab-Dominguez*, No. 23-CV-6658, 2023 WL 7091905, at *3 (E.D.N.Y. Oct. 26, 2023) (dismissing conspiracy claim because vague and conclusory allegations were not enough to "provide some factual basis supporting a meeting of the minds" (quoting *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003)).  Because Plaintiffs cannot maintain their Section 1985(3) claim, their Section 1986 claim fails as well.  *See Smalls v. Cnty. of Suffolk*, No. 14-CV-4889, 2019 WL 4038742, at *16 (E.D.N.Y. Aug. 27, 2019) (dismissing Section 1986 claim because a Section 1985 claim is a "necessary predicate" for a Section 1986 claim).

Therefore, for the reasons stated above, the Court recommends denial of Plaintiffs' request to replead their Conspiracy Claims and dismissal of Counts 14 and 15.

I.    **State Law Claims: Counts 16 and 17**

Plaintiffs previously asserted violations of the New York State Constitution (SAC ¶¶ 452-55, "Count 16") and the New York Civil Rights Law (SAC ¶¶ 456-58, "Count 17").  As stated *supra* (*see* Part I n.2), Plaintiffs withdrew Counts 16 and 17.  Pl. Mem. at 25.  Therefore, the Court recommends dismissal of Counts 16 and 17.

IV.    **CONCLUSION**

For the reasons described above, the Court recommends that Defendant's Motion (ECF No. 181) be granted in part and denied in part as follows: (1) Counts 8 and 10-17 of the SAC should be dismissed with prejudice; (2) Counts 3, 4, and 9 of the SAC should be dismissed in part with prejudice;[16] and (3) Counts 1, 2, 5, 6, and 7 of the SAC should not be dismissed.

V.    **OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil

---

[16] Dismissal of the aforementioned claims with prejudice is appropriate because further amendment could not remedy the relevant deficiencies identified above.  *See Melendez v. Sirius XM Radio, Inc.*, 50 F.4th 294, 297 (2d Cir. 2022) (affirming dismissal of futile claim with prejudice).

Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. *See also* Fed. R. Civ. P. 6(a) & (d) (addressing computation of days). Any requests for an extension of time for filing objections must be directed to Judge Brown. FAILURE TO FILE TIMELY OBJECTIONS SHALL CONSTITUTE A WAIVER OF THOSE OBJECTIONS BOTH IN THE DISTRICT COURT AND ON LATER APPEAL TO THE UNITED STATES COURT OF APPEALS. *See Thomas v. Arn*, 474 U.S. 140, 154-55 (1985); *Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x 486, 487 (2d Cir. 2018); *McConnell v. ABC-Amega, Inc.*, 338 F. App'x 24, 26 (2d Cir. 2009); *F.D.I.C. v. Hillcrest Assocs.*, 66 F.3d 566, 569 (2d Cir. 1995).

**SO ORDERED:**

Dated:    Central Islip, New York
          December 18, 2023

s/ Lee G. Dunst
_____

**LEE G. DUNST**
United States Magistrate Judge

42